[Cite as *State v. Jones*, 2011-Ohio-3202.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. Sheila G. Farmer, P. J. |
| Plaintiff-Appellee | Hon. John W. Wise, J.<br>Hon. Patricia A. Delaney, J. |
| -vs- | |
| | Case No. 2010 CA 00250 |
| BRIAN JONES | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:       Criminal Appeal from the Court of Common
                               Pleas, Case No. 2010 CR 01565(A)


JUDGMENT:                      Affirmed in Part; Reversed in Part and
                               Remanded


DATE OF JUDGMENT ENTRY:        June 27, 2011


APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant

JOHN D. FERRERO                       KELLY S. MURRAY
PROSECUTING ATTORNEY                  116 Cleveland Avenue NW
KATHLEEN O. TATARSKY                  Suite 303
ASSISTANT PROSECUTOR                  Canton, Ohio  44702
110 Central Plaza South, Suite 510
Canton, Ohio  44702-1413

*Wise, J.*

**{¶1}** Appellant Brian Jones appeals his conviction and sentence entered in the Stark County Court of Common Pleas on one count of forgery and one count of money laundering.

## STATEMENT OF THE FACTS AND CASE

**{¶2}** Brian Jones and Michael Roma had known each other for over twenty years prior to becoming business partners/owners of a local Italian restaurant called Angello's. (T. at 16). Prior to acquiring Angello's, Roma owned Roma's Radiator, a successful radiator and air conditioner shop in Perry Township, Ohio, which he planned to sell to one of his employees. Jones had over 30 years in the restaurant business, with his most recent venture being Three Squares Restaurant in Jackson Township, which he decided to close because it was not doing well. (T. at 178).

**{¶3}** In October, 2007, Roma and Jones hired Attorney Gregory Rufo to assist them in forming a LLC called Rom-Jon for the sole purpose of buying Angello's Restaurant. Roma made the initial investment of $245,000, which included a loan of $150,000 to Jones, who agreed to pay it back at the rate of $2,000 a month. Jones, who knew the restaurant business, agreed to be its main operator. As such, he would be responsible for paying the vendors and other expenses. (T. at 18, 22, 179).

**{¶4}** Jones and Roma opened business accounts at Key Bank; one account for payroll and one account for operations – "just general stuff." (T. at 19).

**{¶5}** In the beginning, Roma worked three days at the restaurant and Jones worked three days. Roma, however, found out sometime in January, 2008 that the sale of his radiator business to his employee was not going to go through and he needed to

devote more of his time to its operation. Due to the time spent at the radiator business, Roma stopped going to the restaurant on a weekly basis and left the running of the restaurant exclusively to Jones and Jones' sister Elaine, who was acting as the office manager.

{¶6} Initially, things seemed to be running smoothly, with Jones making the monthly $2,000 payments on his note. However, in July or August, 2008, Roma became aware of some problems with the business when he received a call from the landlord that rent was two months in arrears and the water bills had not been paid. (T. at 23). When questioned by Roma, Jones denied that the bills were not getting paid, going so far as sending him cancelled checks for the bills. Roma later learned these cancelled checks were in fact fake. (T. at 24). Roma went to the restaurant and talked with Elaine Jones where he learned for the first time that a restaurant operating account had been opened at Fifth Third Bank without his knowledge and/or consent, and on which he was not an authorized holder. The only persons authorized to deposit and/or withdraw funds on the Key Bank account were Brian Jones and Elaine Jones, who had no ownership interest in the restaurant. That same night, Roma went to the restaurant, emptied the filing cabinets in the office and took the restaurant's financial records, consisting of five or six boxes, to his home. Upon reviewing these records, Roma discovered that the bills were not getting paid, that Jones had paid his daughter's $1400 cell phone bill from the business account, and that bills for a cabin remodeling were being paid from the business account. (T. at 57-60, 114). Roma also learned that a loan existed with Merchants Capital. Based on this information, in September, 2008, Roma contacted the Perry Police Department. (T. at 31). Eventually, the Ohio Bureau of Criminal

Investigation became involved and Special Agent Al Bansky was assigned to investigate the case for financial crimes. Bansky conducted a criminal investigation, which included subpoenaing bank records and talking to various witnesses. Banksy prepared a flow chart which outlined the various transactions that occurred involving transfers of moneys from the Rom-Jon accounts, Rom-Jon monies used to pay Jones' personal bills, and the Merchants Loan, which was opened in the name of Rom-Jon based on a forged letter from The Rufo Law Firm. (T. at 99-152).

{¶7} As a result of the above investigation, on December 14, 2009, Brian Jones was indicted on one count of Money Laundering, a felony of the third degree, Theft, a felony of the fourth degree, and one count of Forgery, a felony of the fifth degree.

{¶8} On April 2, 2010, the parties entered a written agreement that the allegations in the indictment related only to checks from the business account and not cash taken from the business.

{¶9} On April 12, 2010, a bench trial commenced in this matter.

{¶10} For his part, Jones admitted that the Rufo letter used to obtain the Merchants Capital Loan was forged. (T. at 200-201). As to the other claims, Jones admitted that he wrote checks for his personal needs including the Seneca Lake cabin remodeling, but claimed that he repaid the money from various sources including checks from State Farm Insurance. He further claimed that transferring the Merchants Capital money from Key Bank to Fifth Third Bank, thereby excluding Roma, on the same day he received the loan proceeds from Merchants Capital was nothing more than a coincidence. (T. at 191, 198-200). To the contrary, Jones claimed that he put

more of his personal funds into the business than he took out and had no intention to conceal his activities from Roma, his business partner.

{¶11} On April 19, 2010, the trial court announced its verdict finding Appellant guilty of Money Laundering and Forgery. The court acquitted Appellant on the count of Theft.

{¶12} On May 26, 2010, the trial court held a Sentencing Hearing at which the Appellant was placed on probation for a period of five (5) years.

{¶13} At the separate restitution hearing held on July 22, 2010, Jones argued that the maximum amount of restitution that could be ordered was the amount entered into evidence at trial, that being the sum of $6,500.00 for the cabin remodeling. (Rest. Hrng. T. at 12).

{¶14} The trial court ordered Appellant to pay $6,500.00 in restitution to Michael Roma. This amount of restitution was also included in a Judgment Entry filed on July 23, 2010, and an Order filed on July 27, 2010. The final judgment entry filed on August 3, 2010, however, set the restitution amount at $120,000.00.

{¶15} Appellant now appeals to this Court, assigning the following errors for review:

**ASSIGNMENTS OF ERROR**

{¶16} "I. THE TRIAL COURT'S FINDING OF GUILTY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE.

{¶17} "II. THE TRIAL COURT ABUSED ITS DISCRETION IN ORDERING RESTITUTION."

**I.**

{¶18} In his first assignment of error, Appellant argues that his conviction for money laundering was against the manifest weight and sufficiency of the evidence. We disagree.

{¶19} A review of the sufficiency of the evidence and a review of the manifest weight of the evidence are separate and legally distinct determinations. *State v. Thompkins,* 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541, superseded by constitutional amendment on other grounds as stated by *State v. Smith,* 80 Ohio St.3d 89, 1997-Ohio-355, 684 N.E.2d 668. "While the test for sufficiency requires a determination of whether the State has met its burden of production at trial, a manifest weight challenges questions whether the State has met its burden of persuasion." *State v. Thompkins,* supra at 78 Ohio St.3d 390.

{¶20} In order to determine whether the evidence before the trial court was sufficient to sustain a conviction, this Court must review the evidence in a light most favorable to the prosecution. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492 superseded by State constitutional amendment on other grounds as stated in *State v. Smith* (1997), 80 Ohio St.3d 89, 684 N.E.2d 668.

{¶21} Specifically, an appellate court's function, when reviewing the sufficiency of the evidence to support a criminal conviction, is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks,* supra. This test raises a question of law and does not allow the court to weigh the evidence. *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. The relevant inquiry is

whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Thompkins,* 78 Ohio St.3d at 386, 678 N.E.2d 541.

{¶22} Our standard of review on a manifest weight challenge to a criminal conviction is stated as follows: "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered ." *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. See, also, *State v. Thompkins* (1997), 78 Ohio St.3d 380, 678 N.E.2d 541. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175, 485 N.E.2d 717.

{¶23} In this case, Appellant was convicted of forgery, in violation of R.C. §2913.31 and money laundering. Appellant is only challenging the conviction for money laundering, a violation of R.C. §1315.55, which states as follows:

{¶24} "(A)(1) No person shall conduct or attempt to conduct a transaction knowing that the property involved in the transaction is the proceeds of some form of unlawful activity with the purpose of committing or furthering the commission of corrupt activity.

{¶25} "(2) No person shall conduct or attempt to conduct a transaction knowing that the property involved in the transaction is the proceeds of some form of unlawful activity with the intent to conceal or disguise the nature, location, source, ownership, or

control of the property or the intent to avoid a transaction reporting requirement under section 1315.53 of the Revised Code or federal law."

{¶26} Unlawful activity as set forth in R.C. §2903.0(A) is an act that is a criminal offense in the state in which the act was committed.

{¶27} Specifically, Appellant argues that the State failed to prove that his action in transferring the business account from Key Bank to Fifth National, and thereby excluding Roma from access to the funds, was done with a purpose to conceal or disguise unlawful activity. Appellant argues that his actions were the result of Roma telling him that he no longer wanted anything to do with the business.

{¶28} Initially, we note that Appellant admitted to using a forged document to obtain a loan collateralized by credit card receipts from the restaurant. The same day those loan proceeds went into the Angello's business account, Appellant transferred the money to a new account in a new bank without Roma's knowledge. Further, Appellant did not include Roma as a signer or owner on the account, instead listing his sister as a signatory. Appellant and his sister then proceeded to use the money in this account to pay their own personal debts.

{¶29} Upon reaching a guilty verdict in this case, the trial court, which was the trier of fact, found:

{¶30} "And in this particular case, given the elements of money laundering, as set forth in the statute, the State of Ohio did, in fact, prove beyond a reasonable doubt the elements of venue. It was without question a result of the forgery which was admitted to, that funds were obtained in the loan that were then placed in an account which was immediately transferred on the same day to another bank. The Court does

not find that that was coincidental. And that it does, in fact, fit the elements of the statute in an effort to conceal those funds that were obtained through an illegal act. It does fit the definitions of money laundering. And, accordingly, the Defendant's found guilty beyond a reasonable doubt of that offense." (Verdict T. at 4-5).

**{¶31}** As a reviewing court, this Court does not decide whether it would have come to the same conclusion as the trial court. We may not substitute our judgment for that of the trier of fact. *Pons v. Ohio State Medical Board* (1993), 66 Ohio St.3d 619, 614 N.E.2d 748. 621, 66 Ohio St.3d 619, 614 N.E.2d 748. Rather, we are required to uphold the judgment so long as the record, as a whole, contains some evidence from which the trier of fact could have reached its ultimate conclusions." *Hooten Equipment Co. v. Trimat, Inc.,* 4th Dist. No. 03CA16, 2004–Ohio1128, ¶ 7.

**{¶32}** Further, as a court of review, we are to defer to the findings of the trier of fact because in a bench trial the trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the testimony. *Seasons Coal Company, Inc. v. City of Cleveland* (1984), 10 Ohio St.3d 77, 461 N.E.2d 1273.

**{¶33}** Based on the above, we find that the trial court had before it sufficient evidence as to all of the elements of the crime of money laundering and that its verdict was not against the manifest weight of the evidence.

**{¶34}** Appellant's first assignment of error is overruled.

**II.**

{¶35} In his second assignment of error, Appellant claims that the trial court abused its discretion in determining the amount of restitution in this matter. We disagree.

{¶36} R.C. §2929.18 authorizes financial sanctions in the form of restitution, and provides:

{¶37} "(A) Except as otherwise provided in this division and in addition to imposing court costs pursuant to section 2947.23 of the Revised Code, the court imposing a sentence upon an offender for a felony may sentence the offender to any financial sanction or combination of financial sanctions authorized under this section or, in the circumstances specified in section 2929.32 of the Revised Code, may impose upon the offender a fine in accordance with that section. Financial sanctions that may be imposed pursuant to this section include, but are not limited to, the following:

{¶38} "(1) Restitution by the offender to the victim of the offender's crime or any survivor of the victim, in an amount based on the victim's economic loss. If the court imposes restitution, the court shall order that the restitution be made to the victim in open court, to the adult probation department that serves the county on behalf of the victim, to the clerk of courts, or to another agency designated by the court. If the court imposes restitution, at sentencing, the court shall determine the amount of restitution to be made by the offender. If the court imposes restitution, the court may base the amount of restitution it orders on an amount recommended by the victim, the offender, a presentence investigation report, estimates or receipts indicating the cost of repairing or replacing property, and other information, provided that the amount the court orders as

restitution shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense. If the court decides to impose restitution, the court shall hold a hearing on restitution if the offender, victim, or survivor disputes the amount. All restitution payments shall be credited against any recovery of economic loss in a civil action brought by the victim or any survivor of the victim against the offender."

{¶39} Specifically, Appellant challenges the final sentencing entry which sets the restitution amount in this case ay $120,000.00. This amount differs significantly from the $6,500.00 amount the trial court stated that it would order at the end of the restitution hearing. Appellant argues that the evidence does not support the $120,000.00 restitution amount.

{¶40} The State of Ohio herein agrees that the $120,000.00 figure contained in the final sentencing entry is an error and that the actual restitution order intended by the trial court was the $6,500.00 figure.

{¶41} Upon review, we find that Appellant admitted that he paid $6,500.00 in personal debts out of the corporate funds. We find no evidence to support Appellant's argument that he deposited insurance checks in the corporate account which exceeded or set off his withdrawals.

{¶42} Based on the foregoing, we find that the trial court did not abuse its discretion in ordering restitution in the amount of $6,500.00. We therefore overrule appellant's assignment as to the $6,500.00 restitution award.

{¶43} We do, however, remand this matter back to the trial court to correct its final sentencing entry to reflect the $6,500.00 amount.

{¶44} The judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed in part, reversed in part and remanded for further proceedings consistent with the law and this opinion.

By: Wise, J.

Farmer, P. J., and

Delaney, J., concur.

_____

_____

_____

JUDGES

JWW/d 0620

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


STATE OF OHIO                              :
                                           :
    Plaintiff-Appellee                 :
                                           :
-vs-                                       :          JUDGMENT ENTRY
                                           :
BRIAN JONES                                :
                                           :
    Defendant-Appellant                :          Case No. 2010 CA 00250


For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion.

Costs assessed to Appellant

_____

_____

_____

JUDGES