[Cite as *The Bank of New York Mellon v. Lewis*, 2014-Ohio-5599.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
ERIE COUNTY

| | |
|---|---|
| The Bank of New York Mellon, etc. | Court of Appeals No. E-13-051 |
| Appellee | Trial Court No. 2011 CV 0678 |
| v. | |
| Tonya Lewis, et al. | **DECISION AND JUDGMENT** |
| Appellant | Decided: December 19, 2014 |

* * * * *

Melany K. Fontanazza and James S. Wertheim, for appellee.

Daniel L. McGookey, Kathryn M. Eyster and Lauren McGookey,
for appellant.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} Tonya Lewis appeals a September 11, 2013 judgment of the Erie County

Court of Common Pleas entered against her in a foreclosure action brought by The Bank

of New York Mellon fka the Bank of New York as Trustee for the Certificateholders of

CWABS 2004-01 ("BONY" or "Bank"). The judgment granted BONY's motion for

summary judgment in the action for foreclosure and issued a decree in foreclosure and an order of sale. The judgment also granted the Bank summary judgment on appellant's counterclaim.

{¶ 2} It is undisputed that appellant entered into a mortgage loan agreement with Full Spectrum Lending, Inc. ("Full Spectrum") to refinance her home on October 27, 2003. Under the agreement, appellant executed an adjustable rate note in the principal amount of $116,875 to refinance the purchase of property located at 6602 Alspaugh Drive, Castalia, Ohio. On the same date, appellant executed a mortgage to secure the note.

{¶ 3} On September 26, 2011, BONY filed a complaint for foreclosure against appellant in the Erie County Court of Common Pleas, alleging that it is the holder of the note and that the note and mortgage were in default. BONY alleged that it had satisfied all conditions precedent and had declared the entire balance of the note due and payable. BONY claimed that principal in the amount of $136,612.64, plus interest at the rate of 9.5 percent per annum from November 1, 2009, was due upon the note, plus late charges and advances. BONY alleged that by reason of the default, it was entitled to a decree foreclosing on the mortgage.

{¶ 4} Appellant filed an answer and counterclaim on December 19, 2011. On July 22, 2013, BONY filed a motion for summary judgment on its action for foreclosure and on the counterclaim asserted by appellant against it. It is from the trial court's

2.

judgment of September 11, 2013, granting BONY's motion for summary judgment in both respects that appellant has brought this appeal.

{¶ 5} Appellant asserts one assignment of error on appeal:

## Assignment of Error

The trial court erred in granting BONY's Motion for Summary Judgment.

{¶ 6} Appellate review of trial court judgments granting motions for summary judgment is de novo; that is, an appellate court applies the same standard in determining whether summary judgment should be granted as the trial court. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). To prevail on a motion for summary judgment the moving party must demonstrate:

(1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978).

{¶ 7} Where a properly supported motion for summary judgment is made, an adverse party must respond with specific facts to establish the existence of a material issue of fact for trial. *Riley v. Montgomery*, 11 Ohio St.3d 75, 79, 463 N.E.2d 1246

3.

(1984); *Suder-Benore Co., Ltd. v. Motorists Mut. Ins. Co.,* 2013-Ohio-3959, 995 N.E.2d 1279, ¶ 12 (6th Dist.).  Civ.R. 56(E) provides that "[i]f the party does not so respond, summary judgment, if appropriate, shall be entered against the party."

**Standing**

{¶ 8} Appellant contends that the trial court erred in granting summary judgment for foreclosure because BONY failed to demonstrate by evidentiary-quality materials that it is the holder of both appellant's note and mortgage.  Appellant contends, instead, that the facts demonstrate that BONY is not the real party in interest in the foreclosure action and lacks standing to assert the claim.

{¶ 9} The current holder of the note and mortgage has been recognized as the real party in interest in foreclosure actions.  *Countrywide Home Loans, Inc. v. Montgomery,* 6th Dist. Lucas No. L-09-1169, 2010-Ohio-693, ¶ 12; *Bank of America v. Lynch*, 8th Dist. Cuyahoga No. 100457, 2014-Ohio-3586, ¶ 32.  After the Ohio Supreme Court's decision in *Fed. Home Loan Mtge. Corp. v. Schwartzwald*, 134 Ohio St.3d 13, 2012-Ohio-5017, 979 N.E.2d 1214, however, a conflict has arisen between Ohio courts of appeals on whether a foreclosure plaintiff must show an interest in both the note and mortgage at the time of filing suit to have standing to assert a foreclosure action or whether proof of an interest in either the note or mortgage is sufficient.  The issue has been certified to the Ohio Supreme Court for resolution.  *SRMOF 2009-1 Trust v. Lewis*, 138 Ohio St.3d 1492, 2014-Ohio-2021, 8 N.E.3d 962.

4.

{¶ 10} This court has ruled that standing exists under *Schwartzwald* where the foreclosure plaintiff demonstrates it held an interest in either the note or mortgage at the time it filed suit. *Bank of New York Mellon v. Matthews,* 6th Dist. Fulton No. F-12-008, 2013-Ohio-1707, ¶ 11. As we conclude that BONY is entitled to judgment on the basis that it is the current holder of both the note and mortgage and was the holder of both when it filed suit, resolution of the dispute between appellate courts on whether standing exists where the foreclosure plaintiff is not the holder of both the note and mortgage is not necessary for disposition of this appeal.

{¶ 11} To be successful on a motion for summary judgment in a foreclosure action, a moving plaintiff must file "evidentiary-quality" materials showing:

> 1.) The movant is the holder of the note and mortgage, or is a party entitled to enforce the instrument; 2.) if the movant is not the original mortgagee, the chain of assignments and transfers; 3.) the mortgagor is in default; 4.) all conditions precedent have been met; and 5.) the amount of principal and interest due. [*Wachovia Bank of Delaware, N.A. v.*] *Jackson*, 5th Dist. Stark No. 2010-CA-00291, 2011-Ohio-3202 at ¶ 40-45. *U.S. Bank, N.A. v. Coffey*, 6th Dist. Erie No. E-11-026, 2012-Ohio-721, ¶ 26.

We consider these five elements in turn.

### Affidavits Submitted on Summary Judgment

{¶ 12} BONY submitted in support of its motion for summary judgment the affidavits of Matthew R. Stahlhub of Bank of America, N.A. ("BANA") and of Deborah

5.

Schroeder of Select Portfolio Servicing, Inc. ("Select Portfolio") with exhibits attached. BONY employed the affidavits to authenticate loan records of appellant's mortgage loan and to place them in evidence as business records under Evid.R. 803(6). Appellant contends that the affiants lacked personal knowledge to authenticate and secure admission of the records in evidence.

{¶ 13} Civ.R. 56(E) requires on motions for summary judgment that "supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit."

{¶ 14} The Ohio Supreme Court has identified the requirements to establish admissibility of records under Evid.R. 803(6), the business record exception to the hearsay rule:

"To qualify for admission under Rule 803(6), a business record must manifest four essential elements: (i) the record must be one regularly recorded in a regularly conducted activity; (ii) it must have been entered by a person with knowledge of the act, event or condition; (iii) it must have been recorded at or near the time of the transaction; and (iv) a foundation must be laid by the 'custodian' of the record or by some 'other qualified witness.'" Weissenberger, Ohio Evidence Treatise (2007) 600, Section 803.73. Even after these elements are established, however, a business record may be excluded from evidence if "the source of information or the

method or circumstances of preparation indicate lack of trustworthiness."

Evid.R. 803(6). *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31, ¶ 171.

{¶ 15} Evid.R. 803(6) requires that the affiant "possess a working knowledge of the specific record-keeping system that produced the document." *State v. Davis*, 62 Ohio St.3d 326, 342, 581 N.E.2d 1362 (1991). "While the witness need not have personal knowledge of the creation of the particular record in question, and need not have been in the employ of the company at the time the record was made, *United States v. Evans,* 572 F.2d 455, 490 (5th Cir.1978), he must be able to vouch from personal knowledge of the record-keeping system that such records were kept in the regular course of business." *Id.,* quoting *Dell Publishing Co., Inc. v. Whedon*, 577 F. Supp. 1459, 1464, fn. 5 (S.D.N.Y.1984).

**Stahlhub Affidavit**

{¶ 16} In his affidavit Matthew R. Stahlhub identifies himself as an AVP Operations Team Manager of BANA and states that BANA was a former servicer for The Bank of New York Mellon fka the Bank of New York as Trustee for the Certificateholders of CWABS 2004-01, plaintiff. Stahlhub states that his duties "include having access to and reviewing BANA's business records, reports and data compilations of acts and events made at or near the time by, or from information transmitted by, a person with knowledge, and kept in the ordinary course of BANA's regularly conducted business activity, including those records that relate to the loan made to Defendant by Full Spectrum Lending, Inc. on October 27, 2003."

7.

**{¶ 17}** As to his personal knowledge, Stahlhub further stated:

I am able to testify to the statements contained in this affidavit because I have personal knowledge of BANA's procedures for creating and maintaining these records. As part of my job responsibilities for BANA, I am familiar with the type of records maintained by BANA in connection with the loan.

**{¶ 18}** Stahlhub states that he has reviewed records maintained by BANA including records concerning the servicing of appellant's loan. He states in his affidavit:

"As of November 1, 2003, the Loan was serviced by Countrywide Home Loans, Servicing L.P. In April, 2009, Countrywide Home Loans Servicing, L.P. was renamed BAC Home Loans Servicing L.P. Subsequently, on or about July 1, 2011, BAC Home Loans Servicing, L.P. merged with and into BANA. As such, BANA was the servicer of the Loan since November 1, 2003 until November 16, 2012, when the servicing of the loan was transferred to Select Portfolio Servicing, Inc."

**{¶ 19}** Stahlhub testified that true and accurate copies of the following business records and documents relating to appellant's loan are attached to his affidavit:

| Exhibit | Document |
|---------|----------|
| Exhibit 1 | The note. |
| Exhibit 2 | The mortgage. |
| Exhibit 3 | An Assignment of Mortgage |

8.

| Exhibit 4 | A Loan Modification Agreement |
| Exhibit 5 | A Notice of Intent to Accelerate |
| Exhibit 6 | A BANA payment history of the Loan |
| Exhibit 7 | A screen shot of BANA's servicing records recording when it took physical possession of the note. |

{¶ 20} With respect to possession of the original note, Stahlhub stated in his affidavit that he "reviewed records maintained by BANA that document the physical location of the original Note. As outlined in the screen shot attached as Exhibit 7, BANA had physical possession of the indorsed original Note, a copy of which is attached as Exhibit 1, since July 29, 2011."

{¶ 21} With respect to the mortgage, Stahlhub testified that business records demonstrate that Mortgage Electronic Registration Systems, Inc., as nominee for Full Spectrum Lending, Inc., executed on July 24, 2006, an assignment of the mortgage to appellee and that the assignment was recorded with the Erie County Recorder's Office on August 8, 2006.

**Schroeder Affidavit**

{¶ 22} An affidavit of Deborah Schroeder, a consumer ombudsman analyst of Select Portfolio (referred to as "SPS" in the affidavit) was also submitted by BONY in support of its motion for summary judgment. Schroeder states in her affidavit that Select Portfolio is the current servicer for The Bank of New York Mellon fka the Bank of New York as Trustee for the Certificateholders of CWABS 2004-01, plaintiff, on the loan.

9.

**{¶ 23}** With respect to business records, the Schroeder affidavit states:

SPS maintains records for the Loan at issue in this case in its capacity as current servicer for Plaintiff, the holder of the Note. My duties include having access to and reviewing SPS's business records, reports and data compilations of acts and events made at or near the time by, or from information transmitted by, a person with knowledge, and kept in the ordinary course of SPS's regularly conducted business activity, including those records that relate to the loan made to Defendant by Full Spectrum Lending, Inc. on October 27, 2003 in the principal amount of $116,875.00 ("Loan"), which was secured by a Mortgage on real property commonly known as 6602 Alspaugh Drive, Castalia, OH 44824.

**{¶ 24}** In the affidavit, Schroeder also stated her personal knowledge to testify:

I am able to testify to the statements contained in this Affidavit because I have personal knowledge of SPS's procedures for creating and maintaining these records. As part of my job responsibilities for SPS, I am familiar with the type of records maintained by SPS in connection with the Loan.

**{¶ 25}** Schroeder states in the affidavit that Select Portfolio maintains "records for the Loan at issue in this case in its capacity as current servicer for Plaintiff, the holder of the note." According to the affidavit, her

10.

duties include having access to and reviewing Select Portfolio's business records, reports and data compilations of acts and events made at or near the time by, or from information transmitted by, a person with knowledge, and kept in the ordinary course of Select Portfolio's regularly conducted business activity, including those records that relate to the loan made to the Defendant by Full Spectrum Lending, Inc. on October 27, 2003.

{¶ 26} Attached as exhibits to the affidavit are copies of the loan note, a loan modification agreement, payment history with respect to the loan, and payoff statement.

{¶ 27} Schroeder states in the affidavit that the last payment made on the loan was the payment due on November 1, 2009, and that the loan was in default under the terms of the note and mortgage. Further, on January 4, 2010, a notice of default and acceleration was sent to appellant by BANA.

{¶ 28} Schroeder stated in the affidavit that the default had not been cured and that the balance due on the loan had been accelerated, pursuant to the terms and conditions of the note and mortgage. Schroeder stated the amount of the principal balance due and owing on the note was $136,612.64, subject to interest at an adjustable rate of interest (set forth in the note and loan modification agreement from November 1, 2009) plus late charges and advances.

{¶ 29} Schroeder also states that servicing of the loan was transferred by BANA to Select Portfolio on November 16, 2012.

11.

{¶ 30} Stahlhub claims in his affidavit that he has personal knowledge of BANA's procedures for creating and maintaining records pertaining to appellant's loan. The affidavit also identified Stahlhub's connection to the documents. Stahlhub stated that as part of his job responsibilities for BANA, he was familiar with the type of records maintained by BANA in connection to the loan. Stahlhub stated he was an AVP Operations Manager of BANA.

{¶ 31} The Schroeder affidavit also attested to personal knowledge of Schroeder as to Select Portfolio's procedures for creating and maintaining the loan records attached as exhibits to the affidavit. Schroeder also stated that as part of her job responsibilities for Select Portfolio she was familiar with the documents. Schroeder identified herself as a consumer ombudsman analyst of Select Portfolio.

{¶ 32} In our view, absent evidence to the contrary, the affidavits demonstrated that Stahlhub and Schroeder were competent to lay the foundation for admissibility of the loan records as business records under Evid.R. 803(6) and that copies of the loan documents were true and accurate copies. *See U.S. Bank, Natl. Assn. v. Zokle*, 6th Dist. Erie No. E-13-033, 2014-Ohio-636, ¶ 21-22; *Lynch*, 8th Dist. Cuyahoga No. 100457, 2014-Ohio-3586 at ¶ 22-24.

{¶ 33} Appellant contends that two matters raise into question the reliability of the Stahlhub and Schroeder affidavits in authenticating loan records—(1) the deposition testimony of Christina Kuo and (2) the fact that the copy of the note attached to the complaint differs from the copy of the note provided as an exhibit to the affidavits.

12.

Civ.R. 30(B)(5) provides a procedure of obtaining discovery of private corporations through a notice procedure under which the corporation designates one or more employees, officers, agents, or other authorized persons to testify on its behalf. *State ex rel. Verhovec v. Northwood*, 6th Dist. Wood No. WD-13-002, 2013-Ohio-5074, ¶ 12; Civ.R. 30(B)(5). BONY designated Christina Kuo to testify as its representative under a Civ.R. 30(B)(5) notice of deposition filed by appellant. The deposition proceeded on April 24, 2013.

**{¶ 34}** Kuo testified that she did not begin to work for BANA until March 2011, and that her testimony was based upon her review of electronic copies of BANA's business records. Kuo also testified, however, that she had not seen the original note and lacked knowledge as to BANA's recordkeeping policies and procedures with respect the preparation and maintenance of business records of promissory notes. Under her deposition testimony, Kuo clearly lacked the personal knowledge necessary to qualify business records under Evid.R. 803(6).

**{¶ 35}** Where a Civ.R. 30(B)(5) representative "fails to answer a question or gives an incomplete or evasive answer," the party seeking discovery may file a motion to compel discovery pursuant to Civ. R. 37(A). *State ex rel. Rhodes v. Chillicothe*, 4th Dist. Ross No. 12CA3333, 2013-Ohio-1858, ¶ 19. Appellant did not file a motion to compel BONY to select a new representative with knowledge of BANA's recordkeeping practices to testify. Nor did appellant claim surprise and seek an extension of time under

13.

Civ.R. 56(F) to complete discovery of recordkeeping practices of BANA in order to submit evidence in opposition to BONY's motion for summary judgment.

{¶ 36} In our view, Kuo's testimony of her lack of knowledge as to BANA's recordkeeping practices did not conflict with the testimony by Stahlhub and Schroeder, by affidavit, of their competency to testify on the subject.

{¶ 37} The copy of appellant's note that was attached to the foreclosure complaint was not indorsed. The copy of the note, marked as exhibit No. 1 to both the Stahlhub and Schroeder affidavits contains two indorsements. The note bears an indorsement by the originating lender (Full Spectrum Lending, Inc.) to Countrywide Home Loans. It also shows indorsement by Countrywide Home Loans in blank. Both versions were signed and initialed by appellant.

{¶ 38} Appellant argues that the fact that there were two different versions of the note in evidence, one with and one without the indorsements, raises questions on whether the copy of the notes bearing the indorsements is a true copy of appellant's note. The Twelfth District and the Eighth District Courts of Appeals have both considered and rejected this argument. *Bank of New York Mellon v. Putman*, 12th Dist. Butler No. CA2012-12-267, 2014-Ohio-1796, ¶ 19 (indorsement of the note did not change the terms of the note and both versions were signed and initialed by borrower); *Deutsche Bank Natl. Trust Co. v. Najar*, 8th Dist. Cuyahoga No. 98502, 2013-Ohio-1657, ¶ 59 ("The mere fact that there were two different copies of the note in the record-one with

14.

endorsements and one without-does not mandate a finding that one of the notes was 'unauthentic' or otherwise preclude summary judgment."). We find the reasoning of the Twelfth and Eighth District persuasive and adopt it.

{¶ 39} Accordingly, we conclude that appellant failed to submit for court consideration in opposition to BONY's motion evidence conflicting with Stahlhub's and Schroeder's claims of personal knowledge to lay a foundation for admissibility of loan documents, including the note and mortgage, into evidence as business records. Accordingly, we conclude that the loan documents submitted for court consideration under the Stahlhub and Schroeder affidavits were admissible as business records kept in the ordinary course of business under Evid.R. 803(6) and are to be treated as true and accurate copies of the originals.

### Negotiation of the Note

{¶ 40} Ohio's version of the Uniform Commercial Code governs the negotiation and enforcement of promissory notes.[1] R.C. 1301.01(T)(1) defines the term holder:

> (1). "Holder" with respect to a negotiable instrument means either of the following:
>
> (a) If the instrument is payable to bearer, a person who is in possession of the instrument;

---

[1] R.C. 1301.01 through 1301.21 was repealed in 2011 and renumbered. Because the 2011 enactment applies only to transactions entered into on or after June 29, 2011, we will refer to prior code sections in this judgment.

(b) If the instrument is payable to an identified person, the identified person when in possession of the instrument.

**{¶ 41}** "'Negotiation' means a voluntary or involuntary transfer of possession of an instrument by a person other than the issuer to a person who by the transfer becomes the holder of the instrument." R.C. 1303.21(A). Except in circumstances not applicable here, where "the instrument is payable to an identified person, negotiation requires transfer of possession of the instrument and its indorsement by the holder. If an instrument is payable to bearer, it may be negotiated by transfer of possession alone." R.C. 1303.21(B).

Three categories of persons may enforce negotiable instruments:

(A) "Person entitled to enforce" an instrument means any of the following persons:

(1) The holder of the instrument;

(2) A nonholder in possession of the instrument who has the rights of a holder;

(3) A person not in possession of the instrument who is entitled to enforce the instrument pursuant to Section 1303.38 or division (D) of section 1303.58 of the Revised Code.

(B) A person may be a "person entitled to enforce" the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument. R.C. 1303.31.

16.

{¶ 42} A review of the copy of appellant's promissory note in evidence shows that the note was issued payable to an identified person, the originating lender (Full Spectrum Lending). Full Spectrum indorsed the note to Countrywide Home Loans. Countrywide Home Loans indorsed the note in blank. The business records of BANA also demonstrate that the note was received by BANA on July 29, 2011, and that BANA has had physical possession of the note since that date.

{¶ 43} An instrument payable to bearer "may be negotiated by transfer of possession alone." R.C. 1303.21(B). Consequently, a person in possession of a bearer instrument is a holder of the instrument (R.C. 1301.01(T)(1)(a)) and entitled to enforce it (R.C. 1303.31(A)(1)). The evidence in the record demonstrates that BONY has been the holder of the loan note, indorsed in blank, since obtaining physical possession of it on July 29, 2011. This is because BANA has had physical possession of the note since July 29, 2011, and Ohio courts have recognized that possession of a negotiable instrument by a bank's loan servicing agency acting on behalf of the bank is sufficient possession to establish the bank as holder of the instrument. *Zokle*, 6th Dist. Erie No. E-13-033, 2014-Ohio-636 at ¶ 24.

{¶ 44} Based on this analysis, the evidence in the record demonstrates that BONY is the current holder of the note and was the holder at the time it filed suit.

{¶ 45} Appellant, without legal authority, contends that BONY must establish that Countrywide was entitled to indorse the note to itself on behalf of Full Spectrum to establish negotiation of the note. Appellant's note, however, is a negotiable instrument

17.

and governed by Ohio's version of the U.C.C. As the holder in possession of an instrument indorsed in blank, BONY was entitled to enforce the note. R.C. 1303.31(A)(1); 1301.01(T)(1)(a); *See Matthews*, 6th Dist. Fulton No. F-12-008, 2013-Ohio-1707 at ¶ 24.

### Mortgage Assignment

{¶ 46} A file stamped copy of an assignment of the original mortgage to Bank of New York as Trustee for the Certificateholders of CWABS 2004-01, executed on July 24, 2006, and filed with the office of the Erie County Ohio Recorder on August 8, 2006, is in evidence. As previously discussed, the mortgage assignment is admissible in evidence under the Evid.R. 803(6) business records exception to the hearsay rule.

{¶ 47} Appellant challenges BONY's claim that it is the holder of the mortgage on additional grounds. Appellant argues that evidence in the record is lacking to identify BONY as the mortgage assignee. Bank of New York as Trustee for the Certificateholders of CWABS 2004-01 is the named assignee in the July 24, 2006 mortgage assignment.

{¶ 48} In its foreclosure complaint, BONY is the plaintiff and identified itself as "The Bank of New York Mellon FKA the Bank of New York as Trustee for the Certificateholders of CWABS 2004-01." BONY argues that any confusion as to its identity was resolved in the trial court by evidence it submitted of the merger of Bank of New York with the Bank of New York Mellon in 2007 and the resulting name change.

18.

{¶ 49} BONY attached unauthenticated copies of Form 10-Ks (filed with the Securities and Exchange Commission for fiscal years 2007 and 2008) that recount the merger to its reply brief, filed in support of the motion for summary judgment. Appellant contends that the unauthenticated documents attached to the brief are not competent evidence in this case.

{¶ 50} The Stahlhub and Schroeder affidavits, however, both identify appellee as "The Bank of New York Mellon fka the Bank of New York as Trustee for the Certificateholders of CWABS 2004-01." Furthermore, the record demonstrates that appellee is not a stranger to the debt to which the mortgage relates. It is the holder of the loan promissory note.

{¶ 51} Under the circumstances, we conclude the affidavits are sufficient to clarify BONY's status as assignee of the mortgage and to place the burden on appellant to present evidence setting forth specific facts demonstrating a genuine issue of fact for trial on whether BONY was the assignee. *See BAC Home Loans Servicing, LP v. Taylor*, 9th Dist. Summit No. 26423, 2013-Ohio-355, ¶ 8. Appellant submitted no evidence in the trial court to dispute BONY's claim that it is "The Bank of New York Mellon fka the Bank of New York as Trustee for the Certificateholders of CWABS 2004-01" and the entity identified in the assignment as the assignee of the mortgage note.

{¶ 52} Appellant also contends that the assignment of the mortgage was invalid because, contrary to the trust prospectus, the assignment occurred after the trust closing date. In response, BONY argues appellant lacks standing to object to the assignment.

19.

We agree that appellant lacks standing to challenge the mortgage assignment. This court has recognized that where the debtor is neither a party to nor a third-party beneficiary of a mortgage assignment, the debtor lacks standing to challenge the validity of an assignment of a mortgage. *Bank of New York Mellon v. Huth*, 6th Dist. Lucas Nos. L-12-1241 and L-12-1283, 2014-Ohio-4860, ¶ 25-26.

{¶ 53} We conclude that BONY met its burden of demonstrating that there is no genuine issue of material fact that it is the current holder of both appellant's promissory note and mortgage and was the holder of both at the time it filed the foreclosure complaint. We also conclude that appellant failed to present evidence setting forth specific facts showing the existence of a genuine issue of fact for trial on these matters. Accordingly, we also conclude that BONY has standing to bring this foreclosure action.

{¶ 54} BONY is not the original mortgagee, but has established the chain of assignments and transfers of the mortgage. Evidence in the record demonstrates that on October 27, 2003 appellant executed and delivered to MERS (Mortgage Electronic Registration Systems, Inc.), as nominee for Full Spectrum Lending, Inc., a mortgage on appellant's Alspaugh Drive property. MERS assigned the mortgage to BONY by an assignment executed on July 24, 2006, and filed with the Erie County Recorder on August 8, 2006.

{¶ 55} Under the terms of the note and mortgage, appellant agreed, among other things, to make regular monthly mortgage payments. Appellant testified that she stopped making mortgage payments altogether on the mortgage loan in November 2009. As set

20.

forth in the affidavits submitted in support of the motion for summary judgment, the note was accelerated as a result of the default. On January 4, 2010, a notice of default and acceleration was sent to appellant by BANA. The default has not been cured.

{¶ 56} We conclude that the evidence in the record demonstrates that conditions precedent under the loan have been met and the mortgage is in default.

## Amount of Principal and Interest Due

{¶ 57} BONY has presented by affidavit appellant's payment history on the loan and calculated the amount of principal and interest due. By affidavit, the current servicer of the loan calculates that the unpaid principal balance due and owing on the note is $136,612.64 plus interest at the adjustable interest rate set forth in the note and loan modification agreement from November 1, 2009, plus late charges and advances. The loan servicer calculated a loan payoff as of July 12, 2013, of $194,410.44. In its judgment, the trial court awarded BONY judgment in the amount of $136,612.64 plus interest at the adjustable interest rate set forth in the note and loan modification agreement from November 1, 2009, plus late charges and advances.

{¶ 58} In its motion for summary judgment, appellant sought judgment under the October 27, 2003 note and a loan modification agreement dated July 9, 2009 (exhibit No. 4 to the Stahlhub affidavit and exhibit No. 2 to the Schroeder affidavit). Appellant testified at deposition (submitted in evidence by appellant) that she had executed a series of loan modification agreements including the July 9, 2009 loan modification agreement (exhibit No. 9 to appellant's deposition).

21.

**{¶ 59}** Appellant contends that the amount due on the loan is disputed and the trial court erred as to its award. In her appellate brief, appellant contends that the loan servicer "did not follow the terms of the executed Loan Modifications" of appellant's loan. Appellant, however, did not state in her brief which loan modifications were not followed and in what respect. Appellant made the same broad contention in the trial court, without asserting any specific failure with regard to any specific loan modification. Appellant did not submit any evidence in the trial court responding to contentions in the Schroeder affidavit as to the amount due on the loan.

**{¶ 60}** Appellant also argues that the loan modification agreement attached to BONY's complaint provided for a different rate of interest than used by the trial court in awarding BONY summary judgment. However, BONY's motion for summary judgment was not based upon the loan modification agreement attached to the complaint. The loan modification agreement attached to the complaint is a loan modification agreement dated February 18, 2009, and BONY sought summary judgment on the November 2009 default under the terms of the original note and July 9, 2009 loan modification agreement.

**{¶ 61}** In our view the Schroeder affidavit setting forth the principal balance and interest due on the loan was sufficient to meet its burden on motion for summary judgment to establish the amount of principal and interest due and owing on the note, absent a response by appellant setting forth specific facts showing the existence of a genuine issue of fact for trial:

22.

In determining the propriety of summary judgment in foreclosure actions, courts have consistently held that an averment of outstanding indebtedness made in the affidavit of a bank loan officer with personal knowledge of the debtor's account is sufficient to establish the amount due and owing on the note, unless the debtor refutes the averred indebtedness with evidence that a different amount is owed. *Natl. City Bank v. TAB Holdings, Ltd.*, 6th Dist. No. E-10-060, 2011-Ohio-3715, ¶ 12. *Genoa Banking Co. v. Bergman*, 6th Dist. Ottawa No. OT-12-038, 2013-Ohio-3054, ¶ 16.

{¶ 62} Appellant failed to meet her reciprocal burden in responding to BONY's motion for summary judgment of presenting specific facts evidencing a genuine issue of fact for trial on the issue of the amount of principal and interest owed on the mortgage loan. Accordingly, we conclude that appellant's claim of trial court error with respect to the amount of principal and interest awarded in its judgment is without merit.

{¶ 63} We conclude that BONY established through evidentiary quality materials that (1) it is the holder of the note and mortgage; (2) the chain of assignments and transfers of the mortgage, (3) appellant is in default, (4) that all conditions precedent have been met; (5) and the amount of principal and interest due on the mortgage loan. Appellant argues, as a defense to foreclosure, that BONY acted inequitably and that the trial court erred on equitable grounds in granting BONY foreclosure.

23.

**{¶ 64}** It is undisputed that appellant has failed to make any payment on the mortgage loan since November 2009. Appellant did not present any evidence to the trial court to support her equity defense. Appellant did not present evidence that BONY waived its right to act upon appellant's default or that BONY made any sort of material misrepresentation that would warrant disrupting the terms of the contract between the parties. Under such circumstances we find no abuse of discretion in the trial court's denial of appellant's equitable argument. *See PNC Bank, N.A. v. Bhandari*, 6th Dist. Lucas No. L-12-1335, 2013-Ohio-2477, ¶ 13.

**{¶ 65}** Accordingly, we find appellant's assignment of error with respect to claimed trial court error in granting BONY's summary judgment on its claim for foreclosure not well-taken.

**{¶ 66}** Appellant also contends that the trial court erred in granting BONY summary judgment on appellant's counterclaim.

### Declaratory Judgment

**{¶ 67}** Count 1 of appellant's counterclaim is a declaratory judgment action seeking court declaration that BONY failed to prove it is the holder of appellant's "mortgage loan obligation." As the record demonstrates that BONY was the current holder of both appellant's note and mortgage, the trial court did not err in granting BONY summary judgment on the counterclaim for declaratory judgment.

24.

**Fair Debt Collection Practice Act**

{¶ 68} Count 2 of the counterclaim asserts a claim against BONY under the Fair Debt Collection Practice Act, 15 U.S.C. 1692, et seq. ("FDCPA"). Appellant argues that she is entitled to relief under the FDCPA because BONY filed this action knowing that it could not prove it is entitled to enforce appellant's note. Appellant contends the trial court erred in granting summary judgment to BONY on the FDCPA claim because BONY has not met its burden of demonstrating there is no genuine issue of material fact that it is the holder of appellant's note and mortgage.

{¶ 69} BONY argues that the trial court properly granted it summary judgment of the FDCPA counterclaim. BONY argues that it established on motion for summary judgment that there was no dispute of material fact that it is the current holder of both the note and mortgage and entitled to judgment in foreclosure as a matter of law. As set forth earlier in this decision, we agree. Accordingly, we conclude that the trial court did not err in granting summary judgment to BONY on the FDCPA claim.

**Ohio Consumer Sales Practices Act**

{¶ 70} Count 3 of the counterclaim alleges a claim against BONY for violation of the Ohio Consumer Sales Practices Act. Appellant argues that BONY is liable as a "supplier" under the CSPA, and contends that BONY engaged in a pattern and practice of unfair, deceptive, and unconscionable acts in violation of R.C. 1345.02, 1345.03, and 1345.031 by "authorizing, directing, and filing false affidavits, assignments and other documents related to this Foreclosure Action despite knowing that it was not legally

25.

entitled to do so." Appellant asserts the trial court erred in granting BONY summary judgment on the claim.

{¶ 71} BONY argues that it is a national bank and that transactions between financial institutions, including national banks, and their customers are exempt from consumer transactions subject to the CSPA, citing the Ohio Supreme Court's decision in *Reagans v. Mountainhigh Coachworks, Inc.*, 117 Ohio St.3d 22, 2008-Ohio-271, 881 N.E.2d 271, ¶ 33. The Ohio Supreme Court decision in *Reagans* recognized that generally "transactions between financial institutions and their customers are exempted from the definitions of a 'consumer transaction' subject to the Consumer Sales Practices Act." *Id.*, citing R.C. 1345.01(A).

{¶ 72} In a footnote, however, the court noted that the statute was amended by Am.Sub.S.B. No 185, effective January 1, 2007, to include "certain residential mortgage transactions" that were not before the *Reagans* court for consideration in the case. *Id.* at fn. 2. The statutory change also specified circumstances where mortgage loan purchasers or assignees may be subject to claims as "suppliers" under the CSPA. R.C. 1345.01(C); 1345.091. Neither party addressed whether the 2007 amendments apply or otherwise create a CSPA claim based upon appellant's allegations that BONY knowingly filed false affidavits, assignments and other documents in this foreclosure action.

{¶ 73} We need not resolve the scope of CSPA claims with respect to mortgage loans to determine whether the trial court erred in granting summary judgment on the CSPA claim. In our view, even were the alleged use of fabricated evidence by a

26.

subsequent purchaser and assignee of a residential mortgage loan sufficient to state a claim under the CSPA, the facts do not support such a claim.

{¶ 74} The merits of BONY's foreclosure claim were placed in issue between the parties in BONY's motion for summary judgment. We have determined that the evidence in the record demonstrates the absence of a dispute of material fact and that BONY is entitled to judgment for foreclosure against appellant as a matter of law. The disposition of the foreclosure action precludes any claim that the foreclosure action was based on fabricated evidence.

{¶ 75} We conclude that the trial court did not err in granting BONY summary judgment on appellant's CSPA counterclaim.

### Civil Conspiracy

{¶ 76} Appellant contends that the trial court erred in granting BONY summary judgment on her civil conspiracy counterclaim. Appellant contends that BONY conspired and acted with others to convert her property by wrongfully asserting dominion or control over it under a claim inconsistent with her rights.

{¶ 77} BONY argues that appellant failed to present evidence on summary judgment to support a civil conspiracy claim. BONY also argues that Ohio does not recognize a claim for conversion of real property. We agree. *See Beavers v. PNC Bank, Natl. Assn.*, 8th Dist. Cuyahoga No. 99773, 2013-Ohio-5318 ¶ 30. Even liberally construing the complaint to assert a civil conspiracy involving claimed wrongful conduct impairing appellant's real property interests, however, the claim also fails.

27.

**{¶ 78}** In *Pierce v. Szymanski,* 6th Dist. Lucas No. L-11-1298, 2013-Ohio-205, ¶ 21, we identified the elements of a civil conspiracy claim:

> The elements of a civil conspiracy claim are: "(1) a malicious combination, (2) involving two or more persons, (3) causing injury to person or property, and (4) the existence of an unlawful act independent from the conspiracy itself." *State ex rel. Fatur v. Eastlake*, 11th Dist. No. 2009-L-037, 2010-Ohio-1448, ¶ 45, quoting *Gibson v. City Yellow Cab Co.*, 9th Dist. No. 20167, 2001 WL 123467 (Feb. 14, 2001). "An underlying unlawful act is required before a civil conspiracy claim can succeed." *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 700 N.E.2d 859 (1998).

**{¶ 79}** The evidence on summary judgment demonstrates that appellant retained possession of the property despite making no monthly mortgage payments since 2009. Appellant failed to demonstrate that BONY committed any unlawful action or tort against appellant's interests in the property. Accordingly, we conclude that summary judgment was properly granted on the civil conspiracy claim.

### Breach of Contract

**{¶ 80}** The trial court also granted BONY summary judgment on appellant's counterclaim for breach of contract. Appellant contends that the trial court erred in granting summary judgment on the breach of contract claim. Appellant contends that

28.

BONY breached its contract by refusing to accept payment and filing for foreclosure when it had a loan modification in place and by unilaterally modifying the interest rate and payment amounts.

{¶ 81} In order to establish a claim for breach of contract, a party must prove:

(1) a contract existed, (2) one party fulfilled his obligations, (3) the other party failed to fulfill his obligations, and (4) damages resulted from that failure. *Spano Bros. Constr. Co., Inc. v. Adolph Johnson & Son Co.*, 9th Dist. No. 23405, 2007-Ohio-1427, 2007 WL 912229, ¶ 12, citing *Lawrence v. Lorain Cty. Community College* (1998), 127 Ohio App.3d 546, 548–549, 713 N.E.2d 478. In cases where the facts are undisputed, and the only question to be resolved is whether a breach of contract occurred, a question of law exists for the court to decide. *Farmers Market Drive-In Shopping Ctrs., Inc. v. Magana*, 10th Dist. No. 06AP–532, 2007-Ohio-2653, 2007 WL 1560276, ¶ 32. However, when there is a dispute as to whether the parties' respective actions are sufficient to satisfy the terms of the contract, a question of fact is presented for the trier of fact to decide. *Id.*; *Butler Cty. Bd. of Commrs. v. Hamil*ton (2001), 145 Ohio App.3d 454, 478, 763 N.E.2d 618. *Blake Homes, Ltd. v. FirstEnergy Corp.*, 173 Ohio App.3d 230, 2007-Ohio-4606, 877 N.E.2d 1041, ¶ 77 (6th Dist.).

{¶ 82} The record demonstrates that appellant was in breach of contract, having failed to make required monthly mortgage payments under the loan agreement and loan

29.

modification agreements beginning in November 2009. The breach was the basis of the judgment for foreclosure. Appellant failed to present evidence to create a dispute of material fact in proceedings on summary judgment on the amount of principal and interest due under the loan agreement as modified by loan modification agreements. Appellant also offered no evidence to demonstrate that BONY breached its obligations under the original contract or under the terms of any modification agreement. Accordingly, we conclude that the trial court did not err in granting BONY summary judgment on the breach of contract counterclaim.

### Fraud

{¶ 83} Appellant demanded relief on the basis of claimed fraud in Count 6 of its counterclaim. Appellant contends that the trial court erred in granting BONY summary judgment on the claim.

{¶ 84} Appellant alleged in the counterclaim that it falsely alleged that The Bank of New York Mellon fka the Bank of New York as Trustee for the Certificateholders of CWABS 2004-01, is the holder of both the note and mortgage and that the statements were knowingly false. Appellant alleged that the statements were made with the intent to mislead the court and defendant.

{¶ 85} Proceedings on BONY's motion for summary judgment in this case established that there is no dispute of material fact and that BONY is entitled to foreclose on the mortgage loan as a matter of law, as the current holder of both the note and

30.

mortgage and as the holder of both at the time it filed suit. We conclude that the trial court properly sustained the motion for summary judgment on appellant's counterclaim for alleged fraud.

**Duress**

{¶ 86} In Count 8 of the counterclaim, appellant claimed "[p]laintiff has used threats or coercion to induce Defendant to act in a manner they [sic] otherwise would not." On appeal, appellant contends that the various lenders in this case continued to give appellant loan modification agreements that changed unilaterally (adjustable rate agreements) and that the lenders forced appellant to accept the loan modifications.

{¶ 87} The Ohio Supreme Court considered the issue of duress in avoidance of contract in the decision of *Blodgett v. Blodgett*, 49 Ohio St.3d 243, 551 N.E.2d 1249 (1990):

> To avoid a contract on the basis of duress, a party must prove coercion by the other party to the contract. It is not enough to show that one assented merely because of difficult circumstances that are not the fault of the other party. *Id.* at syllabus.

{¶ 88} The *Blodgett* court also outlined common elements of duress:

> (1) that one side involuntarily accepted the terms of another; (2) that circumstances permitted no other alternative; and (3*) that said circumstances were the result of coercive acts of the opposite party. * * * The assertion of duress must be proven to have been the result of the*

*defendant's conduct and not by the plaintiff's necessities. * * *"* (Emphasis

added.) (Citations omitted.) *Id.* at 246.

{¶ 89} BONY argues that the court properly granted it summary judgment despite appellant's claim of duress because the evidence in the record does not demonstrate coercive acts by BONY against appellant but, instead, shows appellant chose to enter loan modification agreements due to her own difficult circumstances.

{¶ 90} We conclude that the trial court properly granted summary judgment on Count 8 of the counterclaim and in granting BONY summary judgment for foreclosure on the mortgage loan despite appellant's claim of duress. Appellant failed to present evidence in opposing summary judgment on the basis that appellant accepted the terms of any loan agreement with BONY based upon coercive acts by BONY, as opposed to appellant's own circumstances.

{¶ 91} We conclude that the trial court did not err in granting summary judgment on appellant's claims of duress in her counterclaim.

**Punitive Damages**

{¶ 92} Appellant asserts as Count 9 of her counterclaim that she is entitled to an award of punitive damages against BONY. Appellant argues that the trial court erred in granting summary judgment to BONY on the issue of punitive damages. BONY argues that Ohio does not recognize an independent cause of action for punitive damages. We agree:

32.

"No civil cause of action in this state may be maintained simply for punitive damages." *Bishop v. Grdina* (1985), 20 Ohio St.3d 26, 28, 20 OBR 213, 485 N.E.2d 704, superseded by rule on other grounds. See also *Moskovitz v. Mt. Sinai Med. Ctr.* (1994), 69 Ohio St.3d 638, 650, 635 N.E.2d 331 ("punitive damages are awarded as a mere incident of the cause of action in which they are sought. * * *"). *Niskanen v. Giant Eagle, Inc.*, 122 Ohio St.3d 486, 2009-Ohio-3626, 912 N.E.2d 595, ¶ 13.

{¶ 93} Accordingly, we conclude that the trial court did not err in granting BONY summary judgment on appellant's claim for punitive damages asserted in its counterclaim. Appellant's sole assignment of error is found not well-taken.

{¶ 94} Justice having been afforded the party appealing, we affirm the judgment of the Erie County Court of Common Pleas and order appellant to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

The Bank of New York
Mellon v. Lewis
C.A. No. E-13-051

Mark L. Pietrykowski, J.                    _____
                                                          JUDGE

Arlene Singer, J.                           

Stephen A. Yarbrough, P.J.                  _____
CONCUR.                                                   JUDGE

                                            _____
                                                          JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.sconet.state.oh.us/rod/newpdf/?source=6.