[Cite as *Wells Fargo Bank v. Maxfield*, 2016-Ohio-8102.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


WELLS FARGO BANK NATIONAL ASSOCIATION AS TRUSTEE FOR STRUCTURED ADJUSTABLE RATE MORTGAGE LOAN TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-15,

        Plaintiff-Appellee,

  - vs –

DAVID Z. MAXFIELD, et al.,

        Defendants-Appellants.

CASE NO. CA2016-05-089

O P I N I O N
12/12/2016


APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CV2015-01-0085


Kendo Dulaney, LLP, Andrew M. Engel, 7925 Paragon Road, Centerville, Ohio 45459, for defendants-appellants

Thompson Hine LLP, John B. Kopf, 41 South High Street, Suite 1700, Columbus, Ohio 43215, for plaintiff-appellee

Thompson Hine LLP, Terry W. Posey, Jr., Austin Landing 1, 10050 Innovation Drive, Suite 400, Miamisburg, Ohio 45342-4934


    **M. POWELL, P.J.**

    {¶ 1} Defendants-appellants, David Z. Maxfield and Renee M. Maxfield, appeal a decision of the Butler County Court of Common Pleas granting summary judgment to

plaintiff-appellee, Wells Fargo Bank, National Association as Trustee for Structured Adjustable Rate Mortgage Loan Trust Mortgage Pass-Through Certificates, Series 2005-15 ("Wells Fargo"), in a foreclosure action. Appellants also appeal the trial court's denial of their motion to strike an affidavit submitted by Wells Fargo.[1]

## I. FACTS AND PROCEDURE

{¶ 2} On April 29, 2005, appellants executed a promissory note ("Note") in favor of Countrywide Home Loans, Inc. ("Countrywide") in the amount of $278,100, regarding a property located at 323 N. Main St., Oxford, Ohio, 45056-1253 (the "Property"). Contemporaneously with the execution of the Note, appellants granted a mortgage ("Mortgage") to Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for Countrywide, to secure payment of the Note. Following the recording of the Mortgage, appellants conveyed the Property to Big Carrot Company, LLC ("Big Carrot").

{¶ 3} On December 24, 2013, MERS assigned the Mortgage to "Wells Fargo Bank, National Association, as Trustee for the Certificateholders of SARM 2005-15 at 1525 Beltline Rd., Coppell, TX 75019," ("First Mortgage Assignment"). The mortgage assignment was recorded on February 19, 2014, in BK 8670, PG 2186 of the Butler County Recorder's records. On December 10, 2014, in a "corrective" assignment, MERS assigned the Mortgage to "Wells Fargo Bank N.A., as Trustee for Structured Adjustable Rate Mortgage Loan Trust Mortgage Pass-Through Certificates, Series 2005-15, at 1525 Beltline Rd., Coppell, TX 75019," ("Corrective Mortgage Assignment"). The Corrective Mortgage Assignment noted that "[t]his assignment is being recorded to correct the assignee name of the assignment recorded on 02/19/2014 in BK/PG 8670/2186." (The First Mortgage

---

1. Pursuant to Loc.R. 6(A), we sua sponte remove this appeal from the accelerated calendar and place it on the regular calendar for purposes of issuing this opinion.

Assignment and the Corrective Mortgage Assignment will be collectively referred to as the Mortgage Assignments).

{¶ 4} On January 15, 2015, Wells Fargo filed a complaint for foreclosure of the Property, naming appellants, Big Carrot, and the Ohio Department of Taxation as defendants. A copy of the Note, indorsed in blank by Countrywide, was attached to the complaint. Also attached to the complaint were the Mortgage and Mortgage Assignments. The complaint alleged that appellants were in default under the terms of the Note, that Wells Fargo was entitled to enforce the Note which was in default and due, and that Wells Fargo had satisfied all conditions precedent to the filing of the foreclosure action. The complaint further alleged that the Ohio Department of Taxation may have an interest in the Property as a result of a state lien recorded in 2010 for personal income taxes. Attached to the complaint was a copy of a Certificate of Judgment filed with the Butler County Clerk of Courts in favor of the Ohio Department of Taxation for the state lien in the amount of $192.30 ("Tax Lien").

{¶ 5} Appellants answered the complaint, specifically denying that they were in default of the Note and that Wells Fargo was the holder of the Note and entitled to enforce it. Appellants denied for want of knowledge Wells Fargo's claim that the Ohio Department of Taxation may have an interest because of the Tax Lien. Finally, appellants affirmatively alleged that Wells Fargo had not satisfied all conditions precedent to the filing of the foreclosure action.

{¶ 6} Wells Fargo moved for summary judgment on January 15, 2016. In support of its motion, Wells Fargo attached the affidavit of Dan Dickey, a "Document Execution Specialist" with Nationstar Mortgage, LLC ("Nationstar"). Nationstar is Wells Fargo's servicing agent for appellants' loan. The Dickey affidavit referred to the Note, the Mortgage, the Mortgage Assignments, appellants' payment history, and a "demand letter" sent to appellants on August 22, 2014, advising them of their default on the Note. The foregoing

documents were all attached to the affidavit. Dickey averred that appellants' loan was in default as alleged in the complaint. Dickey further averred that his affidavit was based upon personal knowledge obtained from his review of the records relating to appellants' loan.

{¶ 7} Appellants filed a memorandum in opposition to Wells Fargo's summary judgment motion, as well as a cross-motion for summary judgment. Appellants argued there were genuine issues of material fact as to whether Wells Fargo complied with the notice-of-default provisions of the Note and Mortgage, whether the Mortgage was properly assigned to Wells Fargo, and whether Wells Fargo was the holder of the Note at the time the foreclosure action was filed. Appellants also moved to strike the Dickey affidavit on the ground it was not made based upon personal knowledge.

{¶ 8} Wells Fargo's reply was supported by the affidavit of Damontrea Coleman, an assistant secretary with Nationstar. Coleman averred that she had access to the pertinent loan and mortgage records; that her responsibilities included reviewing mortgage and loan records and ensuring their accuracy and execution; that her affidavit was based upon personal knowledge obtained from her review of the relevant business records; and that her averments were within the scope of her duties. Coleman authenticated the Note and averred that Wells Fargo was in possession of the Note at the time it filed the foreclosure action. Coleman further authenticated the Mortgage Assignments, identified Wells Fargo as the assignee in each, and averred that the Corrective Assignment was intended to reflect the long-form name of Wells Fargo as assignee of the Mortgage. Coleman also authenticated a letter dated June 17, 2014, sent by ordinary mail to appellants at the Property address. The letter, which was attached to the Coleman affidavit, advised appellants they were in default of the Note and Mortgage, and that the default could be cured by paying the amount of $6,608.10 by July 22, 2014, or the Note would be accelerated and foreclosure of the Mortgage commenced.

{¶ 9} By entry dated April 5, 2016, the trial court granted Wells Fargo's motion for summary judgment, denied appellants' motion for summary judgment, and denied their motion to strike the Dickey affidavit. In its Final Judgment Entry for Foreclosure, the trial court found that the Ohio Department of Taxation may have an interest on the Property due to the Tax Lien, and further found that the Butler County Treasurer was due taxes, assessments, and penalties upon the Property. The Final Judgment Entry for Foreclosure did not specify the amounts due the Ohio Department of Taxation for the Tax Lien or to the Butler County Treasurer for taxes.

{¶ 10} Appellants now appeal, raising the following two assignment of error.

{¶ 11} Assignment of Error No. 1:

{¶ 12} THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO STRIKE AFFIDAVIT. [sic]

{¶ 13} Assignment of Error No. 2:

{¶ 14} THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO PLAINTIFF.

{¶ 15} In addition to their assignments of error, appellants also argue that this court lacks jurisdiction to consider the appeal because the Final Judgment Entry for Foreclosure is not a final appealable order.

## II. FINAL APPEALABLE ORDER

{¶ 16} Appellants argue that the Final Judgment Entry for Foreclosure is not a final appealable order because it failed to name a necessary party and failed to specify "the amount owed on the liens of the County Treasurer and State of Ohio."

{¶ 17} Appellants initially assert that the mortgage foreclosure count of the complaint is one for declaratory relief. In support of their assertion, appellants refer to a line of cases recognizing that a trial court lacks jurisdiction to grant declaratory relief pursuant to R.C.

2721.12 unless all persons who have or claim an interest in the matter and who may be affected by the declaration are named as parties. However, appellants do not cite, and we have not found, any authority in support of their position that a claim to foreclose a mortgage is an action for declaratory judgment subject to R.C. Chapter 2721. Because we find later in this opinion that the assignees of the First Mortgage Assignment and the Corrective Mortgage Assignment are one and the same, we need not address this issue.

{¶ 18} Appellants claim that the Final Judgment Entry for Foreclosure is not a final appealable order because the Mortgage Assignments name different assignees and the assignee in the First Mortgage Assignment is not a party to the litigation. We address the issue of the identity of the Mortgage assignee in our analysis under appellants' second assignment of error. As noted above, because we find that the assignees in both Mortgage Assignments are the same, the trial court had jurisdiction to adjudicate the mortgage foreclosure count of the complaint to judgment.

{¶ 19} Appellants further claim the Final Judgment Entry for Foreclosure is not a final appealable order because it does not specify the amounts due to the Butler County Treasurer and the Ohio Department of Taxation.

{¶ 20} "It is well-established that an order must be final before it can be reviewed by an appellate court. If an order is not final, then an appellate court has no jurisdiction." *General Acc. Ins. Co. v. Insurance Co. of North America*, 44 Ohio St.3d 17, 20 (1989). An order is final only if it meets the requirements of R.C. 2505.02 and, if applicable, Civ.R. 54. *CitiMortgage, Inc. v. Roznowski*, 139 Ohio St.3d 299, 2014-Ohio-1984, ¶ 10. Pursuant to R.C. 2505.02(B)(1), an order is a final order when it "affects a substantial right in an action that in effect determines the action and prevents a judgment."

{¶ 21} R.C. 2329.192 governs actions involving real property subject to state lien. The statute grants special status to state lienholders and special protection to state liens in

- 6 -

judicial sales of real estate. In particular, the statute provides that "[i]n every action seeking the judicial sale of real estate that is subject to a state lien," the appearance of the "state lienholder" is presumed; the trial court must take judicial notice of the state lien; unless "the amount, validity, or priority of the state lien is identified in the pleadings as disputed," the state lienholder need not plead in the action; and a party disputing the amount, validity, or priority of the state lien must serve the state lienholder and the attorney general with notice of the dispute so that the state lienholder may appear, plead, and defend. R.C. 2329.192(B)(3), (4), and (6). The statute further provides, "Upon the judicial sale of the real estate * * *, the interest of any undisputed state lien shall transfer to the proceeds of the sale of the real estate, and the state lienholder shall be entitled to payment from the proceeds of the sale of the real estate in accordance with the state lienholder's priority[.]" R.C. 2329.192(C).

{¶ 22} Attached to Wells Fargo's complaint was a certified copy of the Tax Lien against appellants in the amount of $192.30. None of the parties, including appellants, identified in their pleadings that there was a dispute as to the amount, validity, or priority of the Tax Lien as required in R.C. 2329.192. In their answer, appellants denied the complaint's allegations regarding the Tax Lien for want of knowledge. A denial for want of knowledge does not identify a dispute as to any aspect of the Tax Lien, but is a profession of ignorance as to the facts of the matter. Furthermore, in their opposition to Wells Fargo's motion for summary judgment and in their own motion for summary judgment, appellants did not dispute the Tax Lien. Finally, the record does not reflect that appellants gave notice of any dispute as to the amount, validity, or priority of the Tax Lien to the Ohio Department of Taxation and the attorney general as required under R.C. 2329.192(B)(6).

{¶ 23} In *Roznowski*, the Ohio Supreme Court addressed whether a judgment decree in foreclosure that includes as part of the recoverable damages amounts advanced by the mortgagee for inspections, appraisals, property protection, and maintenance but does not

include the specific amounts of those items, is a final appealable order pursuant to R.C. 2505.02(B)(1). The supreme court stated,

> [F]or a judgment decree in foreclosure to constitute a final order, it must address the rights of all lienholders and the responsibilities of the mortgagor. As detailed by the Seventh District, the judgment entries in *Walling* and *PHH* were not final orders, because they failed to address the rights of various lienholders involved in those cases. In *LaSalle* and in the present case, however, the judgment entries set forth the rights of all lienholders. Although the trial courts in *LaSalle* and the present case did not specify the actual amounts due, they did state what the mortgagors would be liable for. Each party's rights and responsibilities were fully set forth—all that remained was for the trial court to perform the ministerial task of calculating the final amounts that would arise during confirmation proceedings.

*Roznowski*, 2014-Ohio-1984 at ¶ 20.

{¶ 24} In its analysis, the supreme court noted its agreement with the Seventh Appellate District's treatment of the issue in *LaSalle Bank Natl. Assn. v. Smith*, 7th Dist. Mahoning No. 11 MA 85, 2012-Ohio-4040. In *LaSalle*, the court of appeals addressed whether a decree in foreclosure finding the mortgagor liable for real estate taxes owed to the county treasurer and for certain advances made by the mortgagee, but without specifying the amounts of those items, was a final appealable order. The court of appeals held,

> The judgment entry clearly indicates that certain fees are not ascertainable at the time of the judgment entry. For instance, the accrued taxes that will be owing to the Mahoning County Treasurer at the time of the sale is not ascertainable at the order of foreclosure because it is unclear how long it will take to sell the property. Likewise, if LaSalle advances sums for taxes, insurance and property protection, that is also not ascertainable at the point that foreclosure is ordered. The court cannot compute those figures because their final amount is dependent on how quickly the property sells. However, what is clear from the judgment is that any money that is expended by LaSalle for those items constitutes a lien on the property. While the trial court did state that it is not making any "finding as to the amount of the advances and continues the same until the confirmation of the sale" that statement should not render the judgment nonfinal.

*LaSalle* at ¶ 18.

{¶ 25} In *Roznowski,* the supreme court found that a mortgagor who contests amounts expended by a mortgagee and that are unascertainable prior to the sale of the property, may challenge those amounts as part of the proceedings to confirm the foreclosure sale and may appeal the order of confirmation. *Roznowski,* 2014-Ohio-1984 at ¶ 35. The crucial aspect of a decree in foreclosure is that it sets forth the rights and liabilities of the parties as they relate to damages:

> A distinction must be made between the foreclosure decree—which determines that damages have occurred and sets forth the parties' rights and liabilities as they are related to those damages—and the order confirming the property sale—which sets forth the specific damage amount and distributes the funds accordingly. A court in a foreclosure suit cannot state with certainty how much expense a mortgagee might have to advance before a sheriff's sale has occurred and is confirmed, since interest continues to accrue and unforeseen new costs might arise.
>
> For an order to determine the action and prevent a judgment for the party appealing, it must dispose of the whole merits of the cause or some separate and distinct branch thereof and leave nothing for the determination of the trial court. Liability is fully and finally established when the court issues the foreclosure decree and all that remains is mathematics, with the court plugging in final amounts due after the property has been sold at a sheriff's sale.

(Citations omitted.) *Id.* at ¶ 24-25.

{¶ 26} Appellants cite *Green Tree Servicing L.L.C. v. Columbus & Cent. Ohio Children's Chorus Found.,* 10th Dist. Franklin No. 15AP-802, 2016-Ohio-3426, in support of their argument that a judgment decree in foreclosure is not a final order where it omits "the amounts owed to all lienholders." However, although mentioning in passing that the amounts of various liens were not specified, the gist of the opinion in *Green Tree* was the trial court's failure to determine the validity and priority of the liens of various parties who had appeared in the action and defended:

> In the case at bar, three defendants—the United States, the Columbus School for Girls, and the Children's Chorus—have filed answers asserting their rights under the liens each defendant recorded on the Starchers' property. The July 29, 2015 judgment decree in foreclosure, however, does not mention these liens, much less determine the order of priority of the liens or the amount owed to each defendant. Due to this lapse, the July 29, 2015 judgment decree in foreclosure is not a final order under R.C. 2505.02(B)(1).

*Id.* at ¶ 10. *Green Tree* is therefore not applicable here.

{¶ 27} In support of their argument, appellants also cite a decision and final judgment entry of the Second Appellate District, *The Farmers State Bank v. Sponaugle*, 2d Dist. Darke No. 16 CA 000002 (Apr. 18, 2016). Relying on *Roznowski*, the court of appeals dismissed a foreclosure appeal for lack of a final appealable order because the decree of foreclosure failed to specify amounts due to the county treasurer and another private lienholder. *Sponaugle* does not detail the factual background other than to say that the amounts due to the county treasurer and the private lienholder were not specified in the decree. Generally, with regard to amounts due the county treasurer, we believe dismissal for lack of a final order is a misapplication of *Roznowski*. Additionally, the Second Appellate District did not engage in a full analysis of the issue as the parties agreed there was no final appealable order and thus, the court of appeals lacked jurisdiction to proceed.

{¶ 28} Here, unlike in *Green Tree*, the Final Judgment Entry for Foreclosure adjudicated the validity and priority of the various liens and appellants' liability for the liens. Specifically, the Final Judgment Entry for Foreclosure found that (1) appellants owe Wells Fargo "$275,577.00 plus interest thereon at the rate of 6.75% per annum from April 1, 2014," (2) the Ohio Department of Taxation "may have some right, title, interest, lien, or claim upon the premises * * * but that any right, title, interest, lien, or claim that [the Maxfields] may have is inferior and subsequent to the lien of [Wells Fargo]," (3) the Butler County Treasurer is due "accrued taxes, assessments and penalties on the premises * * *, the exact amount being

unascertainable at the present time," and (4) the Wells Fargo mortgage lien "is a valid first mortgage lien * * * subject only to the lien of the Treasurer for taxes."

{¶ 29} The foregoing establishes the items of damage for which appellants are liable and the priority of the rights of the parties. The determination of the amounts due for real estate taxes and the "undisputed" Tax Lien are not ascertainable until the Property is sold due to the accrual of interest and additional taxes, penalties, and other new costs. Additionally, pursuant to R.C. 2329.192(B)(3), the Tax Lien is subject to judicial notice during the proceedings upon confirmation of the sale of the Property. Therefore, the calculation of the amounts due the county treasurer and the Ohio Department of Taxation is ministerial. The Final Judgment Entry for Foreclosure therefore satisfies the Ohio Supreme Court's rule in *Roznowski* that an entry is final and appealable when it fully sets forth "[e]ach party's rights and responsibilities," subject only to the ministerial task of calculating the final amounts at the confirmation proceedings. *See Roznowski*, 2014-Ohio-1984 at ¶ 20.

{¶ 30} In light of the foregoing, we find that the Final Judgment Entry for Foreclosure is a final appealable order, and therefore, we have jurisdiction to consider the merits under appellants' assignments of error.

### III. THE DICKEY AFFIDAVIT

{¶ 31} In support of its motion for summary judgment, Wells Fargo submitted the Dickey and Coleman affidavits. Appellants did not challenge the Coleman affidavit below, nor do they do so on appeal. Appellants moved to strike the Dickey affidavit on the ground it was not based upon Dickey's personal knowledge, but rather upon his review of documents, including hearsay, which "cannot provide personal knowledge about its contents." The trial court denied the motion to strike without explanation. On appeal, appellants make this same argument under their first assignment of error.

{¶ 32} The determination of a motion to strike is within the trial court's broad

discretion. *Bank of Am., N.A. v. Jackson*, 12th Dist. Warren No. CA2014-01-018, 2014-Ohio-2480, ¶ 9. A trial court's ruling on a motion to strike will not be reversed on appeal absent an abuse of that discretion. *Id.* A decision constitutes an abuse of discretion when the trial court acted unreasonably, arbitrarily, or unconscionably. *Id.*

**{¶ 33}** Civ.R. 56(E) provides that summary judgment affidavits "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit." Personal knowledge is defined as "knowledge of the truth in regard to a particular fact or allegation, which is original and does not depend on information or hearsay." *Re v. Kessinger*, 12th Dist. Butler No. CA2007-02-044, 2008-Ohio-167, ¶ 32. Absent evidence to the contrary, an affiant's statement that his affidavit is based on personal knowledge will suffice to meet the requirement of Civ.R. 56(E). *Jackson* at ¶ 10. In the absence of a specific statement, personal knowledge may be inferred from the contents of an affidavit. *Id.*

**{¶ 34}** In *Jackson*, we found that an affidavit satisfied the personal knowledge requirement of Civ.R. 56(E) where the affiant averred it was made on personal knowledge and nothing in the record rebutted that averment. *Jackson*, 2014-Ohio-2480 at ¶ 13. We further observed that averments in the affidavit implicitly disclosed it was made on personal knowledge because the affiant was a bank officer who was in a position to "acquire, review, and authenticate" the various referenced documents which she had reviewed and authenticated in accordance with the business records hearsay exception under Evid.R. 803(6). *Id.* at ¶ 14-15.

**{¶ 35}** In his affidavit, Dickey averred that he is a document execution specialist for Nationstar, Wells Fargo's servicing agent for appellants' loan; that his affidavit was based upon personal knowledge obtained from his review of Wells Fargo's records relating to appellants' loan; that he was responsible for reviewing those records, ensuring their

accuracy, and verifying the information contained therein; that he had access to business records, including loan documents and loan account documents of Wells Fargo; and that he had personal knowledge of the circumstances surrounding the preparation, maintenance, and retrieval of Wells Fargo's records in Nationstar's record keeping system.

{¶ 36} The Dickey affidavit provided the necessary authentication and attached as summary judgment evidence appellants' payment history, the Note, the Mortgage, the Mortgage Assignments, and a letter mailed to appellants on August 22, 2014, advising them that their loan was in default. Based upon his review of the various documents, Dickey averred that the Mortgage was recorded and had been assigned to Wells Fargo, and that appellants' loan was in default.

{¶ 37} Appellants refer to nothing in the record to rebut either Dickey's averment that his affidavit is based upon personal knowledge or the inference that it is made based upon personal knowledge as a result of his position and duties as a document execution specialist for Nationstar. Appellants only claim that Dickey's affidavit testimony is based upon his review of documents which may not serve as the basis for "personal knowledge."

{¶ 38} As detailed above, the Dickey affidavit refers to the Note, the Mortgage, the Mortgage Assignments, the payment history for appellants' loan, and the August 22, 2014 letter advising appellants of the loan default. In terms of authentication, the Mortgage and Mortgage Assignments, as acknowledged documents, are self-authenticating pursuant to Evid.R. 902(8). By contrast, the Note, payment history, and letter are not self-authenticating and therefore must be authenticated in accordance with Evid.R. 901.

{¶ 39} In his affidavit, Dickey described his duties as a document execution specialist for Nationstar and his personal knowledge of Nationstar's record keeping system. Dickey further averred that a true and accurate copy of the original Note was attached to his affidavit. The Note bears appellants' signatures. Because appellants have not specifically

denied their signatures on the Note, their signatures are self-authenticating pursuant to R.C. 1303.36(A). The Note also bears the same Property address as the Mortgage and Mortgage Assignments. The foregoing is sufficient to authenticate the Note pursuant to Evid.R. 901(B)(1) (testimony from a witness with knowledge) and Evid.R. 901(B)(4) (distinctive characteristics, i.e., appellants' signatures and Property address). The payment history and letter are documents that were produced by Nationstar. Dickey properly authenticated these documents by identifying them as true and accurate.

{¶ 40} Furthermore, the Note, the Mortgage, the Mortgage Assignments, and the August 22, 2014 letter to appellants are not hearsay. "Hearsay" is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). The foregoing documents were not offered to prove the truth of the matters asserted therein. Rather, the Note, the Mortgage, and the Mortgage Assignments were offered to prove that persons engaged in transactions creating legal rights and responsibilities. The August 22, 2014 letter to appellants was offered to prove that notice was given to appellants, not whether the information contained in the letter was true. The Staff Note to Evid.R. 801(C) recognizes this distinction by providing that "Words constituting conduct are not hearsay, e.g., words of a contract * * * and the like." Here, the Note is a contract and the Mortgage and Mortgage Assignments are "like" a contract in that they all create legal rights and responsibilities. Additionally, the Mortgage, the Mortgage Assignments, and the statements contained therein are excepted from the hearsay rule under Evid.R. 803(14) and (15) as records of documents affecting an interest in property and statements in documents affecting an interest in property.

{¶ 41} The only hearsay document referred to by Dickey was the payment history which he qualified as excepted from the hearsay rule as a business record pursuant to

Evid.R. 803(6). "The business records exception is one of numerous exceptions to the hearsay rule." *Jackson*, 2014-Ohio-2480 at ¶ 12. "Evid.R. 803(6) does not require the affiant to have personal knowledge of the 'exact circumstances of preparation and production of the document or of the transaction giving rise to the record.'" *Id.* at ¶ 12.

{¶ 42} The various documents attached to the Dickey affidavit were either self-authenticating or authenticated by Dickey's affidavit testimony. Furthermore, they are either not hearsay or excepted from the hearsay rule of inadmissibility. Therefore, Dickey's reliance upon the documents in framing his affidavit testimony was proper.

{¶ 43} Based upon the foregoing, we find that the trial court did not abuse its discretion in denying appellants' motion to strike the Dickey affidavit. Appellants' first assignment of error is accordingly overruled.

## IV. WELLS FARGO'S MOTION FOR SUMMARY JUDGMENT

{¶ 44} Under their second assignment of error, appellants argue the trial court erred in granting summary judgment to Wells Fargo because (1) Wells Fargo did not establish it was the holder of the Note at the time it filed its complaint, and therefore lacked standing to pursue foreclosure, (2) Wells Fargo failed to satisfy the conditions precedent to initiating the foreclosure action as it did not provide appellants with the notice of default and right to cure required by Section 7(C) of the Note and paragraph 22 of the Mortgage, and (3) a genuine issue of material fact remains as to whether Wells Fargo is the mortgagee due to the discrepancy in the names of the assignees in the First Mortgage Assignment and the Corrective Mortgage Assignment.

{¶ 45} This court reviews a trial court's decision on summary judgment de novo. *Jackson*, 2014-Ohio-2480 at ¶ 32. Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and

that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. *BAC Home Loans Servicing, L.P. v. Kolenich*, 194 Ohio App.3d 777, 2011-Ohio-3345, ¶ 17 (12th Dist.). The moving party has the initial burden of demonstrating there is no genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). Once this burden is met, the nonmoving party may not rest on the mere allegations or denials in its pleadings, but must rebut the moving party's evidence with specific facts showing the existence of a genuine triable issue. *Id.* at 293.

{¶ 46} "A party seeking to foreclose on a mortgage must establish execution and delivery of the note and mortgage; valid recording of the mortgage; it is the current holder of the note and mortgage; default; and the amount owed." *Kolenich* at ¶ 26. Compliance with a notice-of-default provision in a promissory note has been held to be a condition precedent to the filing of a foreclosure action. *HSBC Mtge. Servs. v. Williams*, 12th Dist. Butler No. CA2013-09-174, 2014-Ohio-3778, ¶ 22. However, before a trial court considers the merits of a legal claim, a plaintiff must establish it has standing to proceed. *M & T Bank v. Johns*, 12th Dist. Clermont No. CA2013-04-032, 2014-Ohio-1886, ¶ 8. Whether standing exists is a question of law, and our review of this issue is de novo. *Id.*

### A. Wells Fargo as Holder of the Note

{¶ 47} The Ohio Supreme Court addressed the issue of standing in a foreclosure action in *Federal Home Loan Mtge. Corp. v. Schwartzwald*, 134 Ohio St.3d 13, 2012-Ohio-5017. In that case, the supreme court held that a plaintiff in a foreclosure action must have standing at the time the complaint is filed in order to invoke the jurisdiction of the common pleas court. *Id.* at ¶ 24; *BAC Home Loans Servicing, L.P. v. Mapp*, 12th Dist. Butler No. CA2013-01-001, 2013-Ohio-2968, ¶ 12. Subsequently, the supreme court clarified that standing to commence a foreclosure action requires that the plaintiff be "entitled to enforce the note." *Deutsche Bank Natl. Trust Co. v. Holden*, 147 Ohio St.3d 85, 2016-Ohio-4603, ¶

33.

{¶ 48} Here, the Note was indorsed by Countrywide in blank. "When an instrument is indorsed in blank, the instrument becomes payable to bearer and may be negotiated by transfer of possession alone." R.C. 1303.25(B). The person in possession of an instrument indorsed in blank is the "holder" of the instrument, and as such is a "person entitled to enforce" an instrument. R.C. 1301.201(B)(21), 1303.31.

{¶ 49} Appellants claim that the Dickey affidavit "offered no proof that [Wells Fargo] was in possession of the Note when it filed suit." However, appellants ignore the Coleman affidavit.

{¶ 50} In her affidavit, Coleman averred that she serves as an assistant secretary with Nationstar; that she had access to the pertinent loan and mortgage records; that her responsibilities included reviewing mortgage and loan records and ensuring their accuracy and execution; that her affidavit was based upon personal knowledge obtained from her review of the relevant business records; and that her averments were within the scope of her duties. Coleman authenticated the Note and averred that Wells Fargo was in possession of the Note at the time it filed the foreclosure action.

{¶ 51} Unlike the Dickey affidavit, appellants did not move to strike or otherwise challenge the Coleman affidavit. Coleman's averment that Wells Fargo was in possession of the Note at the time the foreclosure action was filed appears to be a matter within the scope of her knowledge based upon her position and duties with Nationstar. *See Jackson*, 2014-Ohio-2480 at ¶ 14-15. Because her affidavit was not challenged, the trial court was justified in relying upon it in considering Wells Fargo's motion for summary judgment.

{¶ 52} Based upon the foregoing, we find that the trial court did not err in finding that as the holder of the Note, Wells Fargo had standing to commence the foreclosure action.

### B. Compliance with conditions precedent of the Note and Mortgage

{¶ 53} Section 7(C) of the Note and paragraph 22 of the Mortgage each require that appellants be provided with a written notice of both default of the loan and the action required to cure the default. The notice must allow at least 30 days to cure the default from the date the notice is given. Pursuant to Section 8 of the Note and paragraph 15 of the Mortgage, the notice is given by mailing to the address of the Property, or 323 N. Main St., Oxford, OH 45056-1253. Appellants' sole argument is that the August 22, 2014 letter referred to in the Dickey affidavit does not comply with the notice-of-default provisions of the Note and Mortgage because it allows only 14 days for appellants to cure the default, as opposed to not less than 30 days.

{¶ 54} However, and Wells Fargo so concedes in its brief, the August 22, 2014 letter is not the notice of default required by the Note and Mortgage. Once again, appellants ignore the Coleman affidavit in which she authenticates and refers to an attached notice of default mailed to appellants on June 17, 2014, at 323 N. Main St., Oxford, Oh, 45056-1253, and advising them of the default and the action required to cure the default by July 22, 2014. *See* paragraph 8 of the Coleman affidavit. The notice of default referred to by Coleman in her affidavit complies with the requirements of the Note and Mortgage, including providing not less than 30 days to cure the default. That a subsequent letter sent to appellants does not comply with the notice-of-default provisions of the Note and Mortgage does not negate the efficacy of the first notice of default. In fact, the August 22, 2014 letter referred to in the Dickey affidavit actually extended the period to cure the default beyond that set forth in the June 17, 2014 notice-of-default letter referred to in the Coleman affidavit.

{¶ 55} We therefore find that notice of default was properly given to appellants.

## C. Wells Fargo's status as the mortgagee

{¶ 56} Appellants argue there is a genuine issue of material fact as to whether the Corrective Mortgage Assignment to Wells Fargo, as Trustee for Structured Adjustable Rate

Mortgage Loan Trust Mortgage Pass-Through Certificates, Series 2005-15, at 1525 Beltline Rd., Coppell, TX 75019, the named plaintiff in the foreclosure action, effectively assigned the Mortgage to Wells Fargo, in view of the First Mortgage Assignment to Wells Fargo, as Trustee for the Certificateholders of SARM 2005-15, at 1525 Beltline Rd., Coppell, TX 75019.

{¶ 57} As an initial matter, appellants lack standing to challenge the validity of the mortgage assignment. "Ohio courts have routinely found that when a debtor or mortgagor is neither a party to, nor a third-party beneficiary of, the assignment of a mortgage, the debtor or mortgagor lacks standing to challenge the validity of the mortgage assignment between an assignor and an assignee." *Midfirst Bank v. Wallace*, 12th Dist. Warren No. CA2013-12-122, 2014-Ohio-4525, ¶ 14.

{¶ 58} Moreover, even if appellants had standing to challenge the mortgage assignment, their argument still lacks merit. The Corrective Mortgage Assignment, referring to the date and recording information of the First Mortgage Assignment, specifically states, "This assignment is being recorded to correct the assignee name of the assignment recorded on 02/19/2014 in BK/PG 8670/2186."

{¶ 59} As stated above, the Corrective Mortgage Assignment, as an acknowledged document, is self-authenticating pursuant to Evid.R. 902(8). Additionally, the above quoted statement from the Corrective Mortgage Assignment relating to its purpose is admissible under Evid.R. 803(15) as an exception to the hearsay rule:

> The following are not excluded by the hearsay rule * * *: A statement contained in a document purporting to establish or affect an interest in property if the matter stated was relevant to the purpose of the document, unless dealings with the property since the document was made have been inconsistent with the truth of the statement or the purport of the document.

{¶ 60} Finally, Coleman explained in paragraphs 6 and 7 of her affidavit the discrepancy in the names of the assignees in the Mortgage Assignments:

- 19 -

> Plaintiff is the assignee of the February 19, 2014 assignment [the First Mortgage Assignment]. The Assignment of Mortgage assigned the mortgage to Wells Fargo Bank, National Bank, as Trustee for the Certificateholders of SARM 2005-15. The name of the assignee is an abbreviation of Plaintiff's name and includes an acronym, "SARM," which stands for "Structured Adjustable Rate Mortgage."
>
> The Corrective Corporate Assignment of Mortgage recorded on January 26, 2015 assigned the mortgage to Wells Fargo Bank, N.A. as Trustee for Structured Adjustable Rate Mortgage Loan Trust Mortgage Pass-Through Certificates, Series 2005-15. The name of the assignee is the long form of Plaintiff's name. The corrective assignment was recorded to correct and accurately reflect the long-form name of Plaintiff as the assignee.

{¶ 61} The trial court therefore did not err in finding there was no genuine issue of material fact as to whether Wells Fargo was entitled to foreclose upon the Mortgage as the assignee.

{¶ 62} Based upon the foregoing, we find the trial court properly granted summary judgment to Wells Fargo. Appellant's second assignment of error is overruled.

{¶ 63} Judgment affirmed.

RINGLAND and HENDRICKSON, JJ., concur.