[Cite as *U.S. Bank Natl. Assn. v. Daugherty*, 2026-Ohio-870.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

U.S. BANK NATIONAL ASSOCIATION, :
AS TRUSTEE, SUCCESSOR IN            CASE NO. CA2024-10-065
INTEREST TO BANK OF AMERICA, :
NATIONAL ASSOCIATION, AS            OPINION AND
TRUSTEE, SUCCESSOR BY MERGER : JUDGMENT ENTRY
TO LASALLE NATIONAL BANK, AS        3/16/2026
TRUSTEE FOR BCF L.L.C. MORTGAGE :
PASS-THROUGH CERTIFICATES,
SERIES 1997-R3, :

    Appellee, :


    - vs -


WILLIAM A. DAUGHERTY, et al.,

    Appellants.


CIVIL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 21CV094400


McGlinchey Stafford, and Stefanie L. Deka, for appellee.

DannLaw, and Andrew M. Engel, Marc E. Dann, Brian D. Flick, and Whitney E. Kaster for appellants.


**BYRNE, J.**

{¶ 1}   This appeal arises from a foreclosure action. The Warren County Court of

Common Pleas, General Division, granted summary judgment in favor of U.S. Bank,

National Association ("U.S. Bank")[1] and ordered the home of William A. Daugherty and Kathy S. Daugherty ("the Daughertys") to be foreclosed upon to pay a money judgment on a note in default. The Daughertys appealed from that decision. For the reasons described below, we affirm.

## I. Factual and Procedural Background

{¶ 2}   In January 1988, the Daughertys purchased a home located at 1038 Dale Avenue, Franklin, Ohio ("the property"). In conjunction with the purchase, the Daughertys executed a 30-year note secured by a mortgage with Union Federal Savings Bank ("Union") in the amount of $45,308 with a fixed interest rate of 10.5 percent.

{¶ 3}   Over the next three decades, the note and mortgage were transferred multiple times. The final transfer of the note and mortgage was to U.S. Bank. During the same period, the loan was serviced by various entities.

{¶ 4}   In February 2018, the loan matured. At the time of maturity, the loan had an outstanding principal balance of approximately $28,000. At loan maturity, Ocwen Loan Servicing, LLC ("Ocwen") serviced the loan. After loan maturity, the Daughertys continued to make payments on the loan.

{¶ 5}   In June 2019, loan servicing was transferred to PHH Mortgage Services ("PHH"). In August 2020, PHH stopped accepting payments on the loan. In September 2020, PHH sent a letter to the Daughertys indicating that their account was in default, that their loan reached maturity on February 1, 2018, and that all outstanding balances on the loan were now due and payable. The letter demanded $30,108.08 and warned that failure to pay this sum could result in PHH exercising its right to foreclose on the property.

---

1. The named plaintiff in this case is "U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, SUCCESSOR IN INTEREST TO BANK OF AMERICA, NATIONAL ASSOCIATION, AS TRUSTEE, SUCCESSOR BY MERGER TO LASALLE NATIONAL BANK, AS TRUSTEE FOR BCF L.L.C. MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 1997-R3." For ease of reading, we are simply referring to the plaintiff as "U.S. Bank."

{¶ 6} In July 2021, U.S. Bank filed a complaint for a money judgment and foreclosure against the Daughertys. In the complaint, U.S. Bank asserted that it was the possessor of the note described above and was entitled to enforce the note. U.S. Bank indicated that the note was indorsed in blank and as such was payable to bearer. U.S. Bank attached a copy of the note to the complaint.

{¶ 7} The note contains several endorsements and three allonges.[2] The final allonge is undated and contains an endorsement in blank, consistent with U.S. Bank's claim that it was a holder of a note payable to bearer.

{¶ 8} U.S. Bank also attached to the complaint a copy of the mortgage deed and an assignment of the mortgage dated February 2021. In this assignment, Huntington Bank (which indicates it was formerly known as Union) assigned the mortgage to U.S. Bank. This mortgage assignment indicates it was accepted for recording by the Warren County Recorder on February 25, 2021.

{¶ 9} In May 2022, U.S. Bank moved for summary judgment. In the motion, U.S. Bank argued that there were no genuine issues of fact and that it was entitled to enforce the note and mortgage executed by the Daughertys. U.S. Bank indicated it had exercised the acceleration provision of the note and was entitled to the sum of $22,937.67 plus interest at the note rate of 10.5 percent from July 1, 2020.

{¶ 10} In support, U.S. Bank submitted an "Affidavit of Status of Account" signed by Juliana Thurab. Thurab identified herself as a contract management coordinator for PHH. In the affidavit, Thurab averred that in the regular course of her job functions, she had access to and familiarity with the business records relating to the servicing of the

---

2. An allonge is a slip of paper sometimes attached to a negotiable instrument, for the purpose of receiving further indorsements when the original instrument is filled with indorsements. *HSBC Bank USA v. Thompson*, 2010-Ohio-4158, ¶ 56 (2d Dist.), citing *Chase Home Finance, L.L.C. v. Fequiere*, 119 Conn.App. 570, 577, fn. 7 (2010), citing *Black's Law Dictionary* (9th Ed.2009).

Daughertys' loan. Thurab averred that according to her review of those records, U.S. Bank was the holder of the promissory note and mortgage. Thurab further averred, according to the business records she had reviewed, that the last payment received from the Daughertys was in July 2020. Thurab's affidavit authenticated and attached copies of (1) the note, (2) the mortgage, (3) the assignment of mortgage, (4) the PHH demand letter, and (5) a payment history on the loan.

{¶ 11} The payment history consists of three separate payment records. The first record is from Ocwen, and begins in 1995 with a beginning principal balance of $45,160.60. It ends approximately 24 years later, in June 2019, with a principal balance of $25,742.76, and an "interest arrearage" balance of $6,205.79. The first record indicates that the loan was then transferred. Many of the payments noted in the first record are labeled as "forbearance" payments.

{¶ 12} The second record is also from Ocwen and is titled "Detail Transaction History." The second record tracks the loan history from a July 1997 loan disbursement date to the June 2019 loan transfer date. Much of the same information from the first record is repeated in the second record.

{¶ 13} The third record is from PHH and tracks the loan from the time loan servicing transferred to PHH from Ocwen in June 2019. The third record ends in July 2021. On June 4, 2019, the principal balance is listed as $31,948.55. On July 29, 2021, the principal balance is $29,143.55.

{¶ 14} Thurab's affidavit averred that this payment history reflected a principal balance due on the loan of $22,937.76. The difference between this amount and the final balance from July 2021 is $6,205.79. This happens to equal the "interest arrearage" balance listed in Ocwen's records from June 2019. Presumably, the money judgment that PHH demanded on the note did not include this interest arrearage balance.

- 4 -

{¶ 15} The Daughertys opposed summary judgment and presented affidavits in support. In the affidavits, the Daughertys claimed that they began making payments on the note in March 1988 and "made consistent payments" until PHH stopped accepting payments. The Daughertys claimed that after the note matured, on February 1, 2018, Ocwen insisted the note was not paid in full, so they continued making payments.

{¶ 16} The Daughertys contested the amount due and claimed that the approximate $45,000 balance listed as the starting balance when Ocwen began servicing the loan was erroneous. However, they were unable to locate financial records to support this assertion because those records had been destroyed by the bank they used at the time. They also denied participating in any "loss mitigation options" or entering into any forbearance agreements.

{¶ 17} In opposition to summary judgment, the Daughertys set forth three arguments. First, the Daughertys claimed that Thurab lacked sufficient personal knowledge to authenticate the Ocwen payment histories because she was employed by PHH, not Ocwen. Second, they challenged the chain of assignments of the note and mortgage. Third, they argued that U.S. Bank had not established the amount due on the note and that genuine issues of fact remained as to the amount owed.

{¶ 18} U.S. Bank responded with a reply in support of its motion for summary judgment. In summary, U.S. Bank argued the Daughertys' attacks on the Thurab affidavit were not valid based on existing case law, that the Daughertys lacked standing to challenge the assignments of the note and mortgage, and that they had not submitted any admissible summary judgment evidence demonstrating a genuine issue of material fact as to the amount owed.

{¶ 19} In September 2024, the trial court issued a final judgment entry granting U.S

Bank's motion for summary judgment.[3] The court found no genuine issues of fact and that U.S. Bank was entitled to judgment as a matter of law. Accordingly, the court ordered a money judgment in favor of U.S. Bank in the amount of $22,937.76 plus interest (and other related expenses). Furthermore, the court ordered the property foreclosed upon to satisfy this judgment. The court's decision did not address the various arguments raised by the Daughertys.

{¶ 20} The Daughertys appeal, raising a single assignment of error.

## II. Law and Analysis

{¶ 21} The Daugherty's sole assignment of error states:

THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO PLAINTIFF.

{¶ 22} The Daughertys present a single assignment of error, within which they present four "arguments." They present these "arguments" under separate headings in the manner usually reserved for assignments of error. We will address their arguments under the same headings.

### A. Summary Judgment Standard

{¶ 23} "Summary judgment is a procedural device used to terminate litigation when there are no issues in a case requiring a formal trial." *Franchas Holdings, L.L.C. v. Dameron*, 2016-Ohio-878, ¶ 16 (12th Dist.), citing *Roberts v. RMB Ents., Inc.*, 2011-Ohio-6223 ¶ 6 (12th Dist.).

{¶ 24} "Civ.R. 56 sets forth the summary judgment standard." *State ex rel. Becker v. Faris*, 2021-Ohio-1127, ¶ 14 (12th Dist.). "Pursuant to that rule, a court may grant summary judgment only when (1) there is no genuine issue of any material fact, (2) the

---

3. The delay in resolving this case was not attributable to any delay by the trial court, but due to the case being stayed twice while the parties explored loss mitigation options, which efforts were unsuccessful.

- 6 -

moving party is entitled to judgment as a matter of law, and (3) the evidence submitted can only lead reasonable minds to a conclusion that is adverse to the nonmoving party." *Spitzer v. Frisch's Restaurants, Inc.*, 2021-Ohio-1913, ¶ 6 (12th Dist.), citing *BAC Home Loans Servicing, L.P. v. Kolenich*, 2011-Ohio-3345, ¶ 17 (12th Dist.). "A material fact is one which would affect the outcome of the suit under the applicable substantive law." *Hillstreet Fund III, L.P. v. Bloom*, 2010-Ohio-2961, ¶ 9 (12th Dist.), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

{¶ 25} The party moving for summary judgment bears the initial burden of demonstrating that no genuine issue of material fact exists. *Touhey v. Ed's Tree & Turf, L.L.C.*, 2011-Ohio-3432, ¶ 7 (12th Dist.), citing *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 1996-Ohio-107. The moving party "must be able to point to evidentiary materials of the type listed in Civ.R. 56(C) that a court is to consider in rendering summary judgment." *Kelley v. Dayton Pub. Schools Bd. of Edn.*, 2024-Ohio-979, ¶ 21 (2d Dist.), citing *Dresher* at 292-93. Once the moving party meets this burden, the nonmoving party has a reciprocal burden requiring it to present evidence to demonstrate that there is some issue of material fact yet remaining to be resolved. *Smedley v. Discount Drug Mart, Inc.*, 2010-Ohio-5665, ¶ 11 (12th Dist.). The nonmoving party does this by presenting "'specific facts,'" demonstrating the existence of a genuine triable issue; the nonmoving party "'may not rest on the mere allegations or denials in its pleadings.'" *Oliphant v. AWP, Inc.*, 2020-Ohio-229, ¶ 31 (12th Dist.), quoting *Deutsche Bank Natl. Trust Co. v. Sexton*, 2010-Ohio-4802, ¶ 7 (12th Dist.), citing Civ.R. 56(E). "Summary judgment is proper if the nonmoving party fails to set forth such facts." *Taylor v. Atrium*, 2019-Ohio-447, ¶ 10 (12th Dist.), citing *Puhl v. U.S. Bank, N.A.*, 2015-Ohio-2083, ¶ 13 (12th Dist.). "In determining whether a genuine issue of material fact exists, the evidence must be construed in favor of the nonmoving party." *Assured Admin., L.L.C. v. Young*, 2019-Ohio-3953, ¶ 14 (12th Dist.),

citing *Vanderbilt v. Pier 27, L.L.C.*, 2013-Ohio-5205, ¶ 8 (12th Dist.).

{¶ 26} An appellate court reviews a trial court's decision on a motion for summary judgment de novo, independently, and without deference to the decision of the trial court. *Wulf v. Bravo Brio Restaurant Group, Inc.*, 2019-Ohio-3434, ¶ 15 (12th Dist.).

**B. Law Applicable to Foreclosure Claims**

{¶ 27} A party seeking to foreclose a mortgage must establish (1) execution and delivery of the note and mortgage; (2) valid recording of the mortgage, (3) that it is the current holder of the note and mortgage; (4) default, and (5) the amount owed. *Fifth Third Mtge. Co. v. Bell*, 2013-Ohio-3678, ¶ 25, citing *Kolenich*, 2011-Ohio-3345, at ¶ 26. On appeal, the Daughertys do not challenge that the note and mortgage were executed or delivered (first element), that the mortgage was validly recorded (second element), or that they are in default of payment (fourth element). Rather, the Daughertys' arguments focus on whether U.S. Bank presented evidence demonstrating that it is the current holder of the note and mortgage (third element), whether U.S. Bank demonstrated the amount owed (fifth element), and whether genuine issues of fact remain with regard to these issues.

**C. Enforceability of the Note**

{¶ 28} The Daugherty's First Argument states:

APPELLEE FAILED TO PROVE ITS ENTITLEMENT TO ENFORCE THE NOTE.

{¶ 29} The Daughertys argue that the Thurab affidavit did not establish U.S. Bank's entitlement to enforce the note. They also argue that a broken chain of indorsements demonstrates that U.S. Bank was not the holder of the note.

{¶ 30} The Daughertys' arguments here essentially challenge U.S. Bank's standing to bring the foreclosure action. The Ohio Supreme Court has held that a plaintiff

in a foreclosure action must have standing at the time the complaint is filed in order to invoke the jurisdiction of the court. *Fed. Home Loan Mtge. Corp. v. Schwartzwald*, 2012-Ohio-5017, ¶ 24. In order to have standing, the plaintiff must be "'entitled to enforce the note.'" *Id*. at ¶ 18, quoting R.C. 1303.31.

{¶ 31} Here, U.S. Bank presented the court with a note, the final allonge of which was addressed in blank. Ohio law provides that "[w]hen an instrument is indorsed in blank, the instrument becomes payable to bearer and may be negotiated by transfer of possession alone . . . ." R.C. 1303.25(B). The person in possession of an instrument indorsed in blank is the "holder" of the instrument, and as such is a "person entitled to enforce" an instrument. R.C. 1301.201(B)(21)(a); 1303.31.

### 1. The Daughertys' Challenges to Thurab's Affidavit

### a. Thurab's Averment Regarding "Holder" Status

{¶ 32} The Daughertys take issue with an averment in Thurab's affidavit that U.S. Bank was the holder of the note. The Daughertys argue that holder status is a legal conclusion and not properly established by a factual assertion in an affidavit. The Daughertys also argue that Thurab's affidavit failed to state that U.S. Bank was in physical possession of the note.

{¶ 33} In support, the Daughertys cite *Deutsche Bank Natl. Trust Co. v. Thomas*, 2015-Ohio-4037 (10th Dist.). In that case, homeowners in a foreclosure action moved to strike a summary judgment affidavit filed by the lender, arguing, in part, that the affidavit was ineffective to demonstrate possession of a note. *Id*. at ¶ 5. The court of appeals agreed and reversed, finding genuine issues of fact as to whether the lender was in possession of the note:

> Under these circumstances, construing the evidence in favor
> of appellant as the non-moving party, we conclude that the
> Nelson affidavit was insufficient to establish that appellee had

possession of the note and was entitled to enforce the note as the holder. Unlike the affiants in cases such as *Pasqualone*, *Elia*, and *Najar*, Nelson did not state in his affidavit that appellee had possession of the note. Although Nelson asserted that appellee was the holder of the note, an entity's status as a holder is a legal conclusion, and Nelson failed to provide facts to support the conclusion—i.e., that appellee had possession of the blank-indorsed note.

*Id*. at ¶ 19.

{¶ 34} We find *Deutsche Bank* distinguishable. The Daughertys never asserted during the trial court proceedings that the court should deny summary judgment based on the allegation that U.S. Bank did not possess the note. The Daughertys never raised U.S. Bank's possession of the note as an issue and instead merely argued that Thurab lacked personal knowledge concerning the Ocwen payment history. The Daughertys also never moved to strike Thurab's affidavit. Thus, even if an averment that U.S. Bank had physical possession of a note endorsed in blank was necessary, the Daughertys waived this argument by failing to raise it in the trial court. *Gordon v. Mt. Carmel Farms, L.L.C.*, 2024-Ohio-1313, ¶ 42 (12th Dist.), quoting *State v. Keating*, 2020-Ohio-2770, ¶ 27 (12th Dist.) ("We have consistently held that 'a party cannot raise new issues or legal theories for the first time on appeal because such issues or theories are deemed waived.'").

{¶ 35} The Rules of Civil Procedure do not provide for plain-error review in civil cases. *Brock v. Servpro*, 2022-Ohio-158, ¶ 34 (12th Dist.), citing *Jones v. Cleveland Clinic Found.*, 2020-Ohio-3780, ¶ 24. As a result, the Ohio Supreme Court has set a very high bar for invoking the plain-error doctrine in a civil case. *Id*. Specifically, the Ohio Supreme Court has stated:

> In applying the doctrine of plain error in a civil case, reviewing courts must proceed with the utmost caution, limiting the doctrine strictly to those extremely rare cases where exceptional circumstances require its application to prevent a manifest miscarriage of justice, and where the error complained of, if left uncorrected, would have a material

adverse effect on the character of, and public confidence in, judicial proceedings.

*Goldfuss v. Davidson*, 1997-Ohio-401, ¶ 24, citing *Schade v. Carnegie Body Co.*, 70 Ohio St.2d 207, 209 (1982). Therefore, as more recently set forth by the Ohio Supreme Court, "in order for a court to find plain error in a civil case, an appellant must establish (1) a deviation from a legal rule, (2) that the error was obvious, and (3) that the error affected the basic fairness, integrity, or public reputation of the judicial process and therefore challenged the legitimacy of the underlying judicial process." *State v. Morgan*, 2017-Ohio-7565, ¶ 40, citing *Goldfuss* at syllabus.

{¶ 36} Upon review, we find no error, plain or otherwise, in the trial court's conclusion that U.S. Bank possessed a note endorsed in blank. R.C. 1301.201(B)(21)(a) defines "holder" as "[t]he person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." By averring the U.S. Bank was the "holder of the note," Thurab was averring that U.S. Bank had possession of the note. This is consistent with the most recent endorsement in blank, which made the note payable to bearer. R.C. 1303.25(B). In addition, we note that in the complaint, U.S. Bank alleged that it was in possession of the note and attached a copy of the note endorsed in blank to the complaint. The Daughertys' summary judgment evidence set forth no specific facts suggesting that U.S. Bank did not physically possess the note. Therefore, the Daughertys did not meet their reciprocal burden of demonstrating a genuine issue of fact for trial on this issue. Civ.R. 56(E).

**b. Note Authentication**

{¶ 37} The Daughertys next argue that Thurab could not authenticate the note because although she stated that the note attached to her affidavit was a "true and accurate copy" she did not "explain how she reached that conclusion." The Daughertys

state that Thurab was required to state that she compared a copy of the note with the original note, or explain why this could not be done. Again, the Daughertys did not present this argument to the trial court and waived it for purposes of appeal, except for a claim of civil plain error.

{¶ 38} We again find no error. For the proposition that Thurab was required to state that she compared a copy of the note to the original, the Daughertys cite *Wachovia Bank of Delaware, N.A. v. Jackson*, 2011-Ohio-3203, ¶ 49 (5th Dist.), where the court of appeals stated that a plaintiff in a foreclosure action must produce evidence demonstrating that "he or she was able to compare the copy with the original and verify the copy is accurate, or explain why this cannot be done. . . ." *Id*.

{¶ 39} However, in *HSBC Mtge. Servs. v. Williams*, 2014-Ohio-3778 (12th Dist.), we rejected this holding in *Wachovia*, stating:

> As for the Fifth District Court of Appeals' decision in *Wachovia Bank of Delaware, N.A.*, 2011-Ohio-3202 at ¶ 46, 49, which provides that summary judgment affidavits based on documents must include an averment that the affiant compared copies of the documents attached to the affidavit with the originals, this court has not adopted this as a requirement under Civ.R. 56(E), nor do we intend to do so, as the Ohio Supreme Court has not made this a requirement of Civ.R. 56(E). *See Seminatore*, 66 Ohio St.2d at 466-467.

*Id*. at ¶ 19.

{¶ 40} Accordingly, based on the precedent of this district, Thurab was not required to aver that she compared copies of the documents in PHH's file with the originals in order to properly support U.S. Bank's motion for summary judgment. Thurab's affidavit disclosed the position she holds at PHH, described her duties, and stated how her position made her familiar with the Daughertys' loan records. The nature of the facts stated in Thurab's affidavit, combined with the position she holds at PHH and her duties there, creates a reasonable inference that Thurab had personal knowledge of the Daughertys'

loan account and that the note was a true and accurate copy of the original. *See HSBC Mtge.* at ¶ 18.

**2. Challenge to Note Endorsements**

**{¶ 41}** The Daughertys next assert that U.S. Bank is not the holder of the note due to a "hole" in the chain of endorsements of the note. Specifically, the Daughertys claim error in a May 22, 1996 negotiation of the note between the U.S. Department of Housing and Urban Development ("HUD") and an entity called "CF/SPC 1995, Inc." ("CF/SPC"). The Daughertys claim that the language of this transfer contained no endorsement, either special or in blank.[4]

**{¶ 42}** However, the Daughertys lack standing to challenge the validity of the endorsements on the note. *Christiana Trust v. Berter*, 2020-Ohio-727, ¶ 33 (12th Dist.). In *Christiana Trust*, we held that,

> when a debtor or mortgagor is neither a party to, nor a third-party beneficiary of, the assignment of a mortgage, the debtor or mortgagor lacks standing to challenge the validity of the mortgage assignment between an assignor and an assignee.

*Id.*, quoting *MidFirst Bank v. Wallace*, 2014-Ohio-4525, ¶ 14 (12th Dist.). *Accord Buckner v. Bank of New York*, 2014-Ohio-568, ¶ 15 (12th Dist.); *Wells Fargo Bank v. Maxfield*, 2016-Ohio-8102, ¶ 57 (12th Dist.). Applying this rule in *Christiana*, we found that the debtors lacked standing to challenge the validity of an assignment of a promissory note. *Id.* Here, the Daughertys were not parties to or third-party beneficiaries of the assignments of the note between HUD and CF/SPC. They therefore lack standing to

---

4. A blank endorsement is an endorsement by the holder that names no specific payee, thus making the instrument payable to bearer and negotiable by delivery. *Bell*, 2013-Ohio-3678, at ¶ 4, fn. 3, citing *Black's Law Dictionary* (9th Ed. 2009) and R.C. 1303.25(B). A special endorsement is an endorsement that identifies a person to whom the instrument is payable. *Id.*, citing R.C. 1303.25(A).

challenge the validity of this assignment. *Christiana* at ¶ 33.[5]

{¶ 43} That being the case, we do not find any "hole" or other error in the 1996 transfer between HUD and CF/SPC. The Daughertys claim that there was no endorsement language in this transfer. However, the language we have reviewed reflects an endorsement in blank. The allonge is signed by Jay L. Jones as Vice President of CF/SPC and as "Attorney-in-Fact for Secretary of Housing and Urban Development." Below this signature there is an endorsement in blank also signed by Jay L. Jones. (The language states "Pay to the order of:," the next space is blank, and the remaining language indicates "without recourse.") This endorsement in blank made the note payable to bearer and if CF/SPC possessed the note at this time it would be a holder who could subsequently transfer the note to the next assignee in the chain of endorsements, namely, Ocwen Federal Bank FSB.

{¶ 44} Based on the foregoing, we find no merit to the Daughertys' argument that U.S. Bank failed to prove its entitlement to enforce the note.

### D. Enforceability of the Mortgage

{¶ 45} The Daughertys' second argument states:

APPELLEE FAILED TO PROVE IT IS THE MORTGAGEE.

{¶ 46} The Daughertys argue that U.S. Bank failed to prove its entitlement to enforce the mortgage. The Daughertys premise this argument on the concept that the negotiation of a note operates as an equitable assignment of the mortgage, even if the

---

5. In their reply brief, the Daughertys acknowledge, for the first time, the precedent of this district on this issue. They argue that we should reconsider our precedent based on claims that they are entitled to present all defenses that they may have against a creditor and that the inability to challenge the assignments of the note or mortgage deprives them of due process of law. However, an appellant may not raise new arguments or issues in a reply brief. *Seipelt v. Seipelt*, 2023-Ohio-4468, ¶ 19, fn. 5 (12th Dist.), citing *Eckert v. Warren Cty. Rural Bd. Of Zoning Appeals*, 2018-Ohio-4384, ¶ 56 (12th Dist.) It was the Daughertys' responsibility to research the applicable precedent of this district before presenting an argument contrary to our case law. They cannot raise a new argument in a reply brief, thereby depriving the opposing party from presenting a counterargument.

mortgage itself is not assigned or delivered. *See U.S. Bank N.A. v. Marcino*, 2009-Ohio-1178, ¶ 52 (7th Dist.) That is, the mortgage "follows the note" it secures. *Deutsche Bank Natl. Trust Co. v. Najar*, 2013-Ohio-1657, ¶ 65 (8th Dist.). Thus, even if the mortgage document here was never validly assigned to U.S. Bank, U.S. Bank would still be entitled to enforce the mortgage provided it demonstrated that it was the holder of the note.

{¶ 47} The Daughertys argue that U.S. Bank is not the mortgagee based on their argument, which we just addressed, contesting the transfer of the note between HUD and CF/SPC. However, as we have already determined that there was no issue with this transfer, this argument is meritless.

{¶ 48} And even if there was an issue with the assignment of the mortgage, the Daughertys lack standing to challenge the validity of the mortgage assignment. *Midfirst Bank*, 2014-Ohio-4525 at ¶ 14 (12th Dist.) ("when a debtor or mortgagor is neither a party to, nor a third-party beneficiary of, the assignment of a mortgage, the debtor or mortgagor lacks standing to challenge the validity of the mortgage assignment between an assignor and an assignee.").

{¶ 49} Finally, the summary judgment evidence submitted by U.S. Bank contains an assignment of mortgage, recorded with the Warren County Recorder on January 25, 2021, which assigned the mortgage to U.S. Bank. The Daughertys did not present any summary judgment evidence challenging the validity of this transfer or raising any genuine issue of material fact. Accordingly, we find no merit to the argument that U.S. Bank failed to demonstrate its entitlement to enforce the mortgage.

### E. Whether Genuine Issues of Fact Exist as to the Balance Due

{¶ 50} The Daughertys' third argument states:

> THERE REMAINS A GENUINE [ISSUE] OF MATERIAL
> FACT REGARDING THE BALANCE DUE.

{¶ 51} The Daughertys contend that genuine issues of material fact exist as to the amount they owed on the note. Specifically, the Daughertys contend the payment history submitted by U.S. Bank is deficient in several respects.

{¶ 52} First, the Daughertys point out that the note originated in 1988 with a principal balance of $45,308, yet the payment history submitted by U.S. Bank begins in 1995, with a beginning loan balance of $45,160.60 and an interest arrearage balance of $19,123.54.[6] The Daughertys "adamantly declare" "that they made payments in the nine years prior to Ocwen servicing the loan."

{¶ 53} The Daughertys' affidavits state that they started making payments on the note in March 1988 and made "consistent payments" until PHH stopped accepting payments in August 2020. They note that in 1991, they filed a Chapter 13 bankruptcy but that the mortgage was not included in the bankruptcy and that from 1991 to 1996 they made "payments directly to the servicer" of the mortgage. The Daughertys further aver that they requested payment records from the credit union with which they banked from 1988 to 1997 but that they were informed that the account records from those years were no longer stored and had been destroyed. The Daughertys each respectively claimed to have appended to their affidavits "information showing that I claimed the mortgage interest for payments that I made in 1994, 1995 and 1996."

{¶ 54} We have reviewed the attachments to the Daughertys' affidavits. The attachments which appear to relate to the claim of mortgage interest payment do not confirm that the Daughertys "claimed" any mortgage interest for those years. One document is titled "mortgage interest statement" but lists no year and shows a total of $19.35 applied to principal for that unidentified year. There is nothing else in the

6. For reasons that are not clear, in 1997, when Ocwen began servicing the loan, this interest arrearage balance disappears.

attachments that supports the claim that the Daughertys made mortgage interest payments in 1994, 1995, and 1996, or that indicates the amount of those payments.

{¶ 55} Regardless, the Daughertys' uncorroborated assertion that they made "consistent" mortgage payments between 1988 and 1997 does not establish a genuine issue of fact concerning the beginning balance of U.S. Bank's payment history document. The Daughertys' affidavits claim that they "dispute" the balance. But the Daughertys did not provide the trial court with any further evidence to support this claim, such as their own payment records, cancelled checks, or any other documentation establishing the frequency and amount of payments made between note origination and the transfer of servicing to Ocwen. It is well-established that a "'party's unsupported and self-serving assertions, offered by way of affidavit, standing alone and without corroborating materials under Civ.R. 56, will not be sufficient to demonstrate material issues of fact. . . .'" *Bloom*, 2010-Ohio-2961 at ¶ 10, quoting *TJX Cos., Inc. v. Hall*, 2009-Ohio-3372, ¶ 30 (8th Dist.).

{¶ 56} The Daughertys' self-serving averments that they made "consistent" payments on the note are insufficient to create a genuine issue of material fact as to the unpaid principal balance of the loan in face of U.S. Bank's properly supported motion for summary judgment.

{¶ 57} In any event, the Daughertys' bare assertion that they made payments on the note between 1988 and 1997 does not, in any way, contradict the assertion that they could have owed approximately $45,000 in principal and nearly $20,000 in interest nine years after the note originated. The Daughertys may have made payments, but those payments may not have been sufficient to cover both principal and interest, as appears to be the case. The fact that the "mortgage interest statement," appended to the Daughertys' affidavits, indicated that they paid less than $20 towards principal in one unidentified year supports the conclusion that the Daughertys may have had an inability

to pay down their mortgage and were in fact incurring significant interest arrearages over that nine-year period. Thus, even if the Daughertys' bare assertion created a question of fact, it would not be a material fact question that would prevent summary judgment. *Hillstreet Fund III*, 2010-2961 at ¶ 9 (12th Dist.) ("A material fact is one which would affect the outcome of the suit under the applicable substantive law.").

{¶ 58} Second, the Daughertys contend that U.S. Bank's payment history shows that their payments were "misapplied" and "does not prove an amount due." Specifically, the Daughertys state that certain payments listed on the payment history are labeled "forbearance payments." They point to their affidavits in which they aver never having entered into a forbearance agreement as evidence of a genuine issue of material fact.

{¶ 59} The record is not clear regarding the existence of a forbearance agreement between the Daughertys and the loan servicers or note holders. In its brief, U.S. Bank asserts that the payment records indicate that the Daughertys were past due for their April 1995 payment but that no foreclosure was filed because the Daughertys entered into a forbearance agreement through the HUD Fresh Start Program. U.S. Bank cites no portion of the summary judgment evidence that supports this specific assertion.

{¶ 60} Regardless, whether or not the Daughertys made regular payments or payments under a forbearance program does not raise genuine issues of material fact regarding the overall accuracy of the payment history submitted by U.S. Bank. The payment records present a detailed history of transactions showing payments over time applied to principal, interest, and escrow, and a reduction in principal over the course of the loan. The Daughertys' unsupported claim that they never entered into a forbearance agreement is irrelevant to any issue of fact regarding the overall accuracy of the payment records submitted by U.S. Bank.

{¶ 61} Finally, the Daughertys raise questions about an interest arrearage balance

listed on the payment records. The Daughertys claim that the PHH payment records show a principal balance of $25,742.76 and an interest arrearage of $6,205.79 on June 1, 2019 (when loan servicing transferred from Ocwen to PHH). However, on June 4, 2019, the payment records indicate that the principal balance increased to $31,948.55, suggesting that the $6,205.79 interest arrearage was added to the principal balance.

{¶ 62} The Daughertys assert that by combining these balances, U.S. Bank began illegally charging them interest on the interest arrearage balance. In its brief, U.S. Bank admits that the principal and non-interest bearing arrearage were combined in PHH's payment records, but states that the principal balance and interest arrearage were coded separately, and that the interest arrearage balance was coded as a "non-cash adjustment." U.S. Bank claims that while the payment history combines these two balances, PHH's internal system "keeps these amounts separate."

{¶ 63} U.S. Bank's claims here about PHH's internal record-keeping appear to be based upon knowledge of PHH's systems that go beyond the scope of the evidence submitted in support of its summary judgment motion. Regardless, we have reviewed the interest amounts charged during this initial period of PHH's loan servicing. The interest figures appear accurate with interest accruing on the initial balance of $25,742.76 and not consistent with a $31,948.55 balance. Thus, the record supports U.S. Bank's assertion that the Daughertys were not charged interest on the interest arrearage balance despite that interest arrearage being "combined" with the principal balance in PHH's records.

{¶ 64} The judgment sought by U.S. Bank was the principal balance as of July 29, 2021 ($29,143.55) minus the exact amount of the interest arrearage balance shown on June 4, 2019 ($6,205.79). Thus, the Daughertys were not required to pay the interest arrearage balance as part of the money judgment to U.S. Bank and have not demonstrated any genuine issue of fact for trial as to the amount owed on this basis.

## F. Standing

{¶ 65} The Daughertys' fourth argument states:

APPELLEE DID NOT POSSESS STANDING TO COMMENCE THIS CASE.

{¶ 66} In this final argument, the Daughertys reiterate arguments previously asserted about U.S. Bank's alleged failure to demonstrate that it was the holder of the note, and assert, based on these arguments, that U.S. Bank failed to establish standing to enforce the note and mortgage. Based upon our previous disposition of these issues, we find no merit to this argument.

{¶ 67} We overrule the Daughertys' sole assignment of error.

## III. Conclusion

{¶ 68} The Daughertys have not demonstrated any genuine issues of material fact that should have precluded the trial court from granting summary judgment in favor of U.S. Bank.

{¶ 69} Judgment affirmed.

HENDRICKSON, P.J., and M. POWELL, J., concur.

## J U D G M E N T   E N T R Y

The assignment of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed.

It is further ordered that a mandate be sent to the Warren County Court of Common Pleas, for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.

/s/ Robert A. Hendrickson, Presiding Judge

/s/ Mike Powell, Judge

/s/ Matthew R. Byrne, Judge